# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF ESSEX, NOVEMBER TERM 1839, AT SALEM.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE,
Hon. MARCUS MORTON, } Justices.
Hon. CHARLES A. DEWEY,

---

## The Salem India Rubber Company *versus* Jefferson Adams *et al.*

In an action on the case for deceit in the sale of India rubber shoes, the plaintiffs introduced evidence that the boxes containing the shoes were piled in an inconvenient place and apparently so arranged as to prevent a fair and full examination. It was *held*, that, in answer to this, the testimony of a witness was admissible, that he had examined the same shoes at about the same time, at the same place, and under the same circumstances, with a view to making a purchase, and that the defendants offered him every facility for a full examination.

An action on the case on the ground of fraudulent representations by the vendor, on making a sale of goods, cannot be maintained, if the purchaser had full means of detecting the fraud and ascertaining the truth himself by an inspection of the goods.

If on the sale of goods there be an express warranty embodied in the written contract of sale, and in an action against the vendor the purchaser declares in case, according to the old forms, relying on the warranty and its falsity, *it seems* a verdict and judgment against the plaintiff will be a bar to an action of assumpsit on the same warranty.

In an action for deceit in the sale of goods, parol proof of a warranty not contained in the written contract, is only competent as evidence of representation ; and the failure of the plaintiff to support the action will not be a bar to any action, founded on a contract made on good consideration in regard to the subject matter, and not involving a charge of falsity or deceit.

This was an action of trespass on the case. The plaintiffs were a corporation, composed of four members, to wit, Thorndike, Waters, Winn and Fiske. The declaration con-

tained three counts. The first alleges, that whereas Adams, Peirce and Putnam, the defendants, on the 12th of September, 1836, in consideration of $ 14,518·12 to them paid by the plaintiffs, promised to deliver the plaintiffs 12,905 pairs of India rubber shoes, contained in 93 boxes, according to a written specification in their handwriting attending the merchandise, and which shoes were represented by the defendants to be of the very best quality, and equal to samples which the defendants declared to have been taken from several of the boxes promiscuously and without choice, and the defendants delivered the 93 boxes of shoes, warranting them to hold out in number of pairs and in quality as above named ; yet there were not 12,905 pairs, but only 12,400, and a large portion of those mismated and not pairs, and the boxes purporting to contain men's plain shoes contained mostly women's plain shoes, and the boxes purporting to contain men's figured shoes contained in fact mostly women's shoes, and those mostly plain and not figured, &c. of all which the defendants were well knowing ; and the plaintiffs, being ignorant of the fraud and deceit of the defendants in the premises, exported the shoes to New York &c. for sale, but the shoes being bad, ill paired and unmerchantable, the plaintiffs suffered great loss on those which they sold, and 6000 pairs remain on hand, which they have been unable to sell by reason of the bad quality and defects aforenamed, and they have been subject to great expenses and loss of interest, in addition to the price paid for them, together with a reasonable profit which they would have readily obtained therefor in case they had proved a good article, which the defendants well knew they were not.

· The second count alleges, that the defendants, on the 10th of September, 1836, were joint owners of 93 boxes of India rubber shoes which they had imported from Para in the brig Eagle, under the special personal care of Adams, said to contain 12,905 pairs and of different descriptions of men's and women's shoes, according to a written specification made out by Adams, attending the boxes and samples therefrom, and that in consideration that the plaintiffs would buy the shoes, &c. the defendants undertook and faithfully promised the plaintiffs that the shoes were of a superior quality, to wit, according

Salem India
Rubber Co.
v.
Adams.

to the sample and specification ; yet the plaintiffs say that the shoes were not of a superior quality, nor according to sample or specification, but on the contrary, &c. and that the shoes fell short in number of pairs, &c. ; and the plaintiffs aver that Adams was well knowing of the foregoing facts and concealed the same from the plaintiffs, by means of which the plaintiffs have suffered great loss, to wit, $ 10,000.

The third count alleges, that on the 10th of September, 1836, in consideration that the plaintiffs would buy, &c the defendants falsely and fraudulently represented and warranted that all of the shoes were like to and as good as cer tain samples exhibited by the defendants, and would agree and accord with a certain written specification or description exhibited and accompanying them, and that each box would contain the number of shoes set against it in the specification, and that the whole 93 boxes contained 12,905 pairs ; and the plaintiffs aver, that confiding in and deceived by said represen tation and warranty of the defendants, they bought the 93 boxes of shoes and paid the defendants therefor $ 3000 in hand, and gave their negotiable note, payable with interest in six months from date, for $ 11,518·12 ; and the plaintiffs further aver, that the defendants, knowing said representations to be false, and craftily intending to deceive, deceived and defrauded the plaintiffs in this, to wit, that a large proportion of said shoes, at the time of making said representation and promise, were not like to or as good as the samples exhibited to the plaintiffs, but on the contrary were greatly inferior to the samples, were mismated, of an old fashioned shape and form, and of little or no value to the plaintiffs, and a large proportion of the shoes did not accord and agree with the specification and description, but were of a different class and denomination and greatly inferior, &c. and each of the boxes did not contain the number of shoes set against it, but a far less number, and the whole 93 boxes did not contain 12,905 pairs, but only 12,400 pairs.

At the trial, before *Putnam* J., the plaintiffs offered evidence tending to prove, that the shoes were deposited in a contracted and inconvenient room, and that the boxes containing them were so piled, one upon another, that they could not be examined ; that this arrangement of the boxes was designed by the defendants to prevent a full and free examination of the

shoes ; that the shoes were packed in the boxes in a manner calculated to deceive, the best being placed on the top and the inferior ones at the bottom of the boxes ; that many of the boxes contained a less number of pairs than it was represented that they contained ; that many of them contained shoes of a different description and quality from what they were represented to contain ; that many of the shoes were mismated ; and that there were not so many pairs, by several hundred, as were mentioned in the bill of parcels.

The plaintiffs also offered the testimony of one Clifton and one Herrick, tending to show, that the defendants expressly agreed and warranted that the shoes should hold out in number as specified, and that they were well paired and not mismated.

This warranty was shown to have been on the 12th of September, and the evidence of it was objected to by the defendants, on the ground that the contract for the sale of the shoes was in writing and had been made previously to that time.

The plaintiffs then produced a contract in writing, dated the 10th of September, 1836, one part of which was signed by Peirce, one of the defendants, and the other part by Thorndike and Waters. This contract was as follows : —

" Bought of Messrs. Peirce, Adams and Putnam 12,905 pairs of Para rubber shoes, being the lot imported in the brig Eagle, on her last voyage, at $1·12½ per pair ; payment to be made in the following manner ; by $3000 in cash, in usual time, the balance in six months from Monday next, by note of Salem India Rubber Company on interest, or interest added on a six months' note ; the bargain to be completed on Monday next by a regular bill of sale and transfer of insurance to us."

The policy of insurance on the shoes was produced, with a regular transfer of it to the plaintiffs.

The plaintiffs produced a bill of the shoes as follows : —

" The Salem India Rubber Co., bought of Jacob Putnam,
    John B. Peirce and Jefferson Adams,
12,905 pairs Para rubber shoes at $1·12½,        $14,518·12.
        Received payment by notes, 3000, — 11,518·12.
Salem, Sept. 12, 1836. The value of 11 pairs of shoes made up out of another lot. John B. Peirce, for owners of brig Eagle."

On the part of the defendants several witnesses were exam‑ ined, who had been large dealers in India rubber shoes, and whose testimony went to show the general usage of the trade in this article, and the manner in which the article is examined and purchases of it made. Similar testimony was introduced on the part of the plaintiffs.

Among the witnesses called by the defendants was one J. H. Rogers ; whose testimony was objected to by the plain‑ tiffs. He testified, that he had been concerned in the rubber trade about twelve years ; that the importers of shoes call those " men's," which the dealers find to be nothing but " women's " ; that he has found cases marked " men's," which contained nothing but " women's " shoes, such as in selling will fit a woman's foot better than a man's ; that he pur‑ chased of the plaintiffs a part of the Eagle's cargo of shoes ; that he examined the shoes himself, in the store of one Smith ; that they were in the second story, and the boxes were two or three tier deep ; that he directed what cases should be opened ; that every facility was afforded him to examine these shoes, that was usual in such cases ; that all the boxes were opened which he desired to have opened ; that the persons in attend‑ ance appeared to be desirous of exhibiting the shoes, without any reserve ; that he discovered nothing that showed any un‑ willingness to have them examined ; that he examined the boxes from the top to the bottom, taking a tier of shoes right through ; that he continued his examination about one hour, and was so well satisfied with the shoes, that he made an offer of $ 1·25 a pair for 6750 pairs, which was not accepted ; and that this offer was made for the boxes supposed to contain the largest sized shoes.

C. A. Smith was also called as a witness by the defendants, and his testimony was objected to. He testified, that in the summer of 1836 he was employed as clerk at his father's store, in South Salem ; that the shoes of the brig Eagle were stored in the loft of the store ; that Winn and Peirce came to the counting‑room ; that they asked him for the use of pen, ink and paper at the desk, and that he furnished them ; that while they were at the desk, examining papers, Winn said to Peirce, ' there are not so many large shoes in the cases that I have

examined as *this* (the specification) says ; "that Peirce said that the specification was not to be depended on at all for a description of the shoes, for it was made out by Adams in so hasty a manner at Para ; that Winn said, "very well, I have always found in the lots I have purchased, that there were fewer large shoes than was represented ;" that while at the desk, Winn said to Peirce, that they would give one note for the amount ; that Peirce said they might want to use the money before it became due and might want it divided ; that Winn said, if he would call upon him at any time, he would split the note ; that Winn and Peirce were in the counting-room about three quarters of an hour ; that this was about a month after the arrival of the vessel, which was about the 19th of August, 1836 ; that the witness was once with Winn and Peirce at the chamber where the shoes were ; that he recollected Rogers's coming there to look at the shoes ; that he thought nearly half the boxes were opened ; and that the shoes were often left out on and about the boxes.

On cross examination he stated, that he saw Winn, while at the desk, writing what he supposed to be a note ; that he supposed it was a note, from the conversation that he heard ; that he could not say it was a note.

The following facts were testified to, showing the connexion Winn had with this business ; in addition to those mentioned by Smith.

The bill of parcels was admitted to be in the handwriting of Winn.

Clifton stated, that on the 29th of August, Thorndike and Winn requested him to go and examine the shoes ; that he went back and told Thorndike, Waters, Winn and Fiske, all the members of the company being together, that they were a very good lot of shoes ; that on the 12th of September, Winn inquired of Adams how he obtained such a lot of shoes ; that on that day, Peirce and Winn went to the counting-room to settle for the shoes ; that Winn proposed to Peirce and Adams to go into the counting-room and settle for them ; that the witness went to the store with Winn on the 12th of September, and took Herrick to assist in counting ; that the witness told Winn how the shoes had turned out, that there was a great

deception in them, and advised him to notify the parties ; that Winn was at the meeting of the parties on the third of October ; and that Winn went to New York on account of these shoes.

Herrick testified, that Clifton asked Winn what he should do in relation to counting the shoes. This was on the 12th of September.

The defendants moved the Court to instruct the jury :—

1. That to support this action the plaintiffs must prove that they were imposed upon by the fraud of the defendants.

2. That if the plaintiffs had the full means of detecting the fraud or any fraudulent representations, and ascertaining the truth by an inspection of the shoes, they could not maintain this action.

3. That oral testimony could not be admitted to prove a warranty or undertaking which did not appear by the contract of the 10th of September, or bill of sale or parcels of the 12th of September.                                    :

4. That oral testimony could not be admitted to prove that the defendants did sell by specification, as the parties entered into a written contract which does not refer to that specification.

5. That the contract of sale was made by the agreement of September 10th ; and that no statements or representations made subsequently by the defendants, in relation to the shoes, could be given in evidence, or taken into consideration by the jury.

The Court adopted the first and second points, but did not adopt the third, fourth, or fifth, on the ground that this action was for fraud and deceit, and that all the representations and conduct of the defendants, before and after the sale, having a tendency to prove the fraud which the plaintiffs charged upon the defendants, were admissible ; and the jury were instructed accordingly.

The Court also instructed the jury as follows :— The action is brought to recover damages for an alleged fraud in a contract for the purchase of a cargo of India rubber shoes. The action is for the deceit ; and is not brought upon a promise, on the contract, but for an alleged fraud in the sale by the defend-

ants.   And it is immaterial whether it was the fraud of one or
more of them, if there has been any fraud at all.   If the de-
fendants sent an agent to Para, and he packed the shoes artful-
ly and fraudulently, so as to deceive the plaintiffs, the defend-
ants are answerable as if they had all been there.   It will not
follow because the plaintiffs cannot substantiate this action, that
they cannot maintain an action upon a promise or undertaking
of the defendants to do what they have not done.   There must
have been a fraud practised, which the defendants, or one or
more of tnen, must have known, to render them liable in this
action.

The jury gave their verdict for the defendants.

If the evidence which was received should have been re-
rected, or if the jury were misdirected in matter of law, a new
trial was to be granted ; otherwise judgment was to be entered
upon the verdict.

Cushing and Perkins, for the plaintiffs, insisted that the tes-     *Nov. 7th,*
timony of Rogers, as to facilities afforded him for making a full        1838.
examination of the shoes, was irrelevant, having no tendency
to show that the same fairness was exhibited towards the plain-
tiffs ; more especially as the object of Rogers was to make a
selection and not to purchase the whole cargo ; that Smith's
testimony concerning Winn's declarations was inadmissible,
for Winn's agency, if any, was limited to making a settle-
ment for the shoes, and his declarations respecting the bar-
gain, which had been previously completed by other agents
of the plaintiffs, were not a part of the *res gestæ* ; *Fairlie*
v. *Hastings,* 10 Ves. 123 ; *Haven* v. *Brown,* 7 Greenleaf,
424 ; *Westcot* v. *Bradford,* 4 Wash. C. C. R. 500 ; that the
gist of the action was a warranty, and the *scienter* was not ma-
terial and need not be proved ; *Williamson* v. *Allison,* 2 East,
446 ; *Gresham* v. *Postan,* 2 Carr. & Payne, 540 ; that the
writing of the 10th of September and the bill of parcels, were
not intended to contain the whole terms of the contract, and
the warranty, being made at the time of the sale and being a
collateral and independent fact, not inconsistent with the writ-
ings, might be given in evidence ; *Bradford* v. *Manly,* 13
Mass. R. 142 , *Hogins* v. *Plympton,* 11 Pick. 97 ; and that
the instruction, that if the plaintiffs failed to substantiate this
action, they might maintain an action on the promise of the

Salem India
Rubber Co.
v.
Adams.

defendants, was not correct in point of law and had a tendency to mislead the jury ; *Livermore* v. *Herschell*, 3 Pick. 37, 38.

*Saltonstall, B. Merrill* and *Proctor, contrà,* cited to the point, that in order to render the defendants liable in this action, the plaintiffs must prove fraud, *Pickering* v. *Dowson,* 4 Taunt. 778 ; *Meyer* v. *Everth,* 4 Campb. 22 ; *Gardiner* v. *Gray,* ibid. 144 ; 2 Kent's Comm. (3d ed.) 487 ; 2 Stark. Evid. (4th Amer.) ed. 468 ; that the written contract of the 10th of September could not be controlled or varied by any thing said on the 12th, *Hogins* v. *Plympton,* 11 Pick. 97 ; *Pickering* v. *Dowson,* 4 Taunt. 779 ; and that the testimony of Rogers was admissible, *Matthews* v. *Whitney,* 12 Wendell, 396 ; *New Eng. M. Ins. Co.* v. *De Wolf,* 8 Pick. 56.

SHAW C. J. afterward drew up the opinion of the Court. This was an action of trespass on the case, charging the defendants with deceit in the sale of India rubber shoes.  The verdict being for the defendants, several exceptions have been taken, in behalf of the plaintiffs, who now move for a new trial.

1.  The first objection was to the testimony of Rogers ; in which he stated that he had examined the same lot of shoes, about the same time, at the same place and under the same circumstances, and that the defendants offered him every facility for a full and fair examination.  It was objected to, on the ground, that this was an examination which took place in the absence of the plaintiffs, and led to no conclusion that the plaintiffs had the means of making a similar examination.  But it must be considered, that this was in answer to evidence on the part of the plaintiffs, offered to show, that the boxes were piled in an inconvenient place, and apparently so arranged as to prevent a fair and full examination.  It was also shown by other evidence, that the boxes were in the same condition, when the plaintiffs examined, as when Rogers examined them. In this view of the case, we think the evidence was competent.

2.  The next exception is, that the acts and declarations of Winn were admitted as evidence.  Winn was one of the members of the plaintiff corporation, consisting of four persons only.  As a member of the corporation only, his declarations would not be competent.  And regarding him as an agent, his declarations and admissions, made after his agency had ceased,

in regard to past transactions, would not be competent. But his acts and declarations, as an agent, made during his agency, and in the conduct and management of it, are *res gestæ*, and are binding upon the principal, being in legal effect his own acts. A corporation can in general act only by its authorized agents. We think that there was satisfactory evidence in the case, that Winn acted as one of the agents of the company, that his acts as such were recognized by them, and therefore that his declarations, attending the negotiation and contract of sale between the parties, were properly admitted in evidence.

3. The next exception was, that the Court instructed the jury, that if the plaintiff had the full means of detecting the fraud, if any fraudulent representations were made, and of ascertaining the truth for themselves, by an inspection of the shoes, they could not maintain this action. This instruction, as applied to the subject matter, we think was correct. The case of the plaintiffs, went on the ground of false representation by the defendants, and loss and damage occasioned thereby to the plaintiffs. The gist of the action is, that the plaintiffs were imposed upon and deceived by the fraud of the defendants. *Pickering* v. *Dowson*, 4 Taunt. 779. If the plaintiff has full means of examining for himself, he cannot aver that he was imposed upon by the false representation. Where there is an *express* warranty, indeed, on the part of the defendant, embodied in, and made part of the contract of sale, and this warranty is false, case will lie, on the ground that by means of the warranty the buyer is lulled into security and prevented from making any examination. *Williamson* v. *Allison*, 2 East, 446. But here was no competent evidence of express warranty, covering the principal subjects of the plaintiffs' complaint. There was a preliminary agreement in writing, and subsequently a bill of sale executed, and no warranty expressed in either, as to the quality of the shoes. This was competent evidence bearing upon the point of fraudulent misrepresentation, but it proved no express warranty of the quality of the shoes.

As to the charge, that a failure in this action would be no bar to an action on contract, we think this was put merely by way of illustration and must be taken in reference to the sub-

*Salem India Rubber Co. v. Adams.*

Salem India
Rubber Co.
v.
Adams.

ject matter. If there had been an express warranty embodied in the contract, and the plaintiffs had declared in case according to the old forms, relying upon such express warranty and its falsity, we are not prepared to say that it would not have been a bar to an action of assumpsit on the same warranty. We think that it would, because, the same evidence would support both actions, and the damages recovered in one, would be a satisfaction of those claimed in the other. But here was no such express warranty, and the qualified warranty attempted to be shown by parol, which we think was competent only as evidence of representation, might not cover the whole matter of the plaintiffs' complaint. And the effect of the charge was, that notwithstanding the failure of the plaintiffs to support this action, it would not be a bar to any action founded on contracts made on good consideration, in regard to the subject matter of this sale and not involving a charge of falsity or deceit. In this respect, we think, there was no error in this charge.

On the whole, the Court are of opinion that there is no sufficient ground for sustaining the exceptions, and that judgment is to be rendered on the verdict for the defendants.