MONELL AND WELLER against COLDEN,

THIS was an action on the case for a fraudulent representation in the sale of land. The declaration contained six counts.

Where a person is induced to purchase land by a false repre-sentation that a certain privi-lege is annexed to the land, but which is not included in the deed, he may maintain an action on the case against the vendor.

·· Where a person was induced to purchase and give a higher price for a lot of land upon a navigable river, by a fraudulent representation, that he would, as proprietor of the land, be entitled to a grant from the commissioners of the land office, of the land covered with water adjacent thereto, and the purchase being completed, the purcha-ser, on applying for a grant from the commissioners, discovered that the adjacent land under water had previously been granted, and that the title to it was out of the state; it was held that the purchaser might maintain an action on the case for the deceit.

It seems, that the measure of damages, in such case, is the difference between the value of the land conveyed, and the sum which the purchaser was induced to pay by the fraudulent representation.

The first count stated that the defendant, on the first of *June*, 1810, claiming to be seised in fee of a certain lot of land, situate in the village of *Newburgh*, in the county of *Orange*, bounded, &c., (here the boundaries were set forth, one of which is the high-water mark on the west side of the *Hudson*,) containing 146,206 and 1-2 square feet; that, on the same day, a conversation was had between the parties, of and concerning the sale of the said land, by the defendant to the plaintiffs, and of and. concerning the value of the land, and of the rights, privileges, and bene-fits appurtenant thereto, and of and concerning the amount demanded by the defendant for the sale of the land, and of the rights, privileges, and benefits appertaining thereto; and that the defendant, in the said conversation, and in order deceit-fully and fraudulently to induce and persuade the plaintiffs to purchase, did falsely and fraudulently affirm, that in case the plaintiffs became the purchasers of the land, they would, by vir-tue thereof, become entitled to make an application to the com-missioners of the land office for the lands under the water of *Hudson* river, adjacent to the said land, agreeable to the provi-sions of the laws of this state; and the plaintiffs, giving faith to such affirmation, and not knowing. to the contrary thereof, agreed with the defendant to purchase the land, and give him therefor, the sum of 20,500 dollars; that the defendant, on the same day and year aforesaid, in pursuance of the agreement, and in fur-ther prosecution of his said false and fraudulent intent, did frau-dulently and wrongfully demand and receive from the plaintiffs the said sum, for the consideration money for the land, and thereupon did, by indenture of bargain and sale, bearing date the day and year aforesaid, executed by the defendant and his wife, grant to the plaintiffs, their heirs and assigns, the said land, together with all and singular the privileges, advantages, here-ditaments, and appurtenances whatsoever, unto the said land belonging, or appertaining; whereas, in fact, long before the making the agreement between the parties, to wit, on the 25th of *June*, 1743, all the right and title of the king of *Great Britain*, then supreme lord and proprietor of the land under the water of all navigable rivers in this state, to all the land under the water of *Hudson* river adjacent to the before-mentioned and de-scribed premises, had been duly granted by letters patent, under the great seal of the then colony, unto one *Alexander Colden*,

and his heirs and assigns, and which the defendant, before, and at the time of making the agreement with the plaintiffs, well knew, whereby the plaintiffs were not entitled to make application for such land under water, and could not obtain the same, and so the plaintiffs say, that by reason, &c., they were deceived, &c., and have lost all the use, benefit, and profit arising from the right and title to the said land under water, and have sustained great damage.

The second count stated that the defendant, on the first of *June*, 1810, was seised in fee of all that certain other lot, &c., and proceeded, in all respects, similar to the first count.

The third count stated, that, by the 11th section of the act, entitled, "an act concerning the commissioners of the land office, and the settlements of land," passed the 24th of *March*, 1801, it is enacted, "That it shall be lawful for the said commissioners to grant so much of the lands under the waters of navigable rivers, as they shall deem necessary, to promote the commerce of this state, provided, always, that no such grant shall be made to any person whatsoever, other than the proprietor, or proprietors, of the adjacent land; and provided, also, that every applicant for such grant shall, previous to his, or her, application, give notice thereof, by advertisement, to be published in one of the newspapers printed in this state, for six weeks successively, and shall cause a copy of such advertisement to be put up at the court-house of the county in which the lands lay, so intended to be applied for, and if there be no court-house in the county, then at such place as the commissioners direct;" that, on the 1st of *June*, 1810, a certain other conversation was had between the parties, of and concerning a certain other lot, lying, &c., containing, &c., which lay adjacent to, and was in extent, along the *Hudson* river, (a certain navigable river in this state,) 264 feet; that the defendant, in order to induce the plaintiffs to purchase the said last-mentioned lot, did affirm, and represent, that the defendant was the owner of the lot in fee; and did, also, falsely, fraudulently, and deceitfully, affirm and represent, that whosoever was the owner, in fee, of the lot, would, by an application to the commissioners of the land office, under the act aforesaid, receive a grant of so much land, under the water of the *Hudson*, as lay adjacent to the said lot, and that he, the defendant, would assist the plaintiffs in pro-

ALBANY,
August, 1816.

MONELL
v.
COLDEN.

curing such grant, in case the plaintiffs became the purchasers of the lot from the defendant; and that the plaintiffs, giving faith to such affirmation, and not knowing to the contrary thereof, agreed to purchase, &c., and by an indenture of bargain and sale, the defendant and his wife granted, &c., together with all and singular, &c.; whereas, in fact, the commissioners of the land office could not grant any land, under water, adjacent to the said lot, the same having been long before, to wit, more than twenty years before that time, duly granted to one *Alexander Colden*, and all the right of the people of the state was vested in the said *Colden*, his heirs and assigns, all which premises the defendant, at the time of making the false and fraudulent affirmation, well knew, and the defendant had no right or title from *Colden*, his heirs or assigns, which he well knew, and so the plaintiffs say, &c., concluding as in the first count.

The fourth count, after setting forth the act of the legislature, the conversation between the parties, sale and conveyance, as in the third count, stated, that the plaintiffs, on the 1st of *January*, 1813, at *Albany*, applied to the commissioners of the land office for a grant of the land under water, which application was refused by the commissioners, they having no right to grant the same, which the defendant well knew; and, that the said land, under water, had long before, to wit, on the 25th of *June*, 1743, been duly granted to one *Alexander Colden*, his heirs and assigns, which the defendant well knew; and that the right and title to the same was out of the people of the state, and not vested in them, which the defendant well knew. And so, &c.

The fifth count stated, that the defendant was seised in fee, of, &c., bounded, &c.; and that, by the eleventh section of an act concerning the commissioners of the land office, and the settlement of lands, passed, &c., it is enacted, &c.; (as in the third count;) that the *Hudson* river is a navigable river, and the owner, in fee, of the said lot, was, by virtue of the said act, entitled, by an application to the commissioners of the land office, and by conforming to the directions of the act, to a grant of the land under water, adjacent to the lot, provided the same had not been before granted by the commissioners, or by other legal authority, to some former owner of the land adjacent thereto, or other person; that, on the 25th of *June*, 1743, a patent was issued by the colony of *New-York*, under the then existing laws, to *Alexander Colden*, then being proprietor of the

land above high water, adjacent thereto, in fee, for a certain space of ground under the water of *Hudson* river, 100 feet into the same, from high-water mark; the whole length of the lands held by *Colden*, in a certain tract in *Ulster* county, beginning on the north side of *Quassaick* creek, and extending northerly up *Hudson's* river, upon a straight line, 219 chains, being part and parcel of the space of ground and soil of *Hudson's* river, so granted to *Alexander Colden*, and being the land under water adjacent to the lot granted by the defendant to the plaintiffs, by reason whereof the right and title to the said land under water was vested in *Alexander Colden*, his heirs and assigns, and was out of the people of this state, and could not be granted by the commissioners of the land office; that at the time of the grievance hereinafter mentioned, the title to the same was vested in *Cadwallader R. Colden*, and not in the defendant, or any other person under him; that the piece of land before described was worth 500 dollars, but in case the land under the water, adjacent thereto, had still been vested in the people of the state, it would have been worth the sum of 30,000 dollars; that the plaintiffs, believing that the land under water had not been granted to any person, but was still vested in the people of the state, and not knowing to the contrary thereof, and being desirous of purchasing the lot of land, principally with intent to obtain from the commissioners of the land office a grant of the land under water adjacent thereto, in order to improve the same by the erection of docks, stores, houses, and other buildings thereon, afterwards, to wit, on the 1st of *June*, 1810, applied to the defendant to purchase the lot of land from him, and informed him that they intended, in case they purchased the land, to apply to the commissioners of the land office, for a grant of the land under water adjacent thereto, with intent to improve the same, by the erection of docks, stores, houses, and other buildings; and that thereupon a conversation was had between the parties of and concerning the said land under water, the defendant well knowing the object of the plaintiffs in making the purchase; and that the land, exclusive of the right to obtain a grant of the land under water, was of little value; and that the land under water had been granted to *Alexander Colden*, and did not belong to the people of the state, nor to the defendant, and that the plaintiffs could not obtain a grant thereof; the defendant, in order, fraudulently, to procure

to himself the moneys of the plaintiffs, and to defraud them of the same, and fraudulently to induce them to purchase the lot of land for a larger sum than the same was truly worth, and in order to have the plaintiffs to believe, that they, by the purchase, would be enabled to obtain a grant of the land under water, in the said conversation did fraudulently conceal from the plaintiffs the fact that the land under water had been granted to *Alexander Colden*, and did not belong to the people of the state, nor to the defendant ; whereas, in fact, the said land under water had, on the 1st of *June*, 1743, been duly granted to *Alexander Colden*, and the right thereto was out of the people of the state, and was not vested in them, nor in the defendant, but in one *Cadwallader R. Colden*. And so, &c.

The sixth count stated, that the defendant claimed to be seised, in fee, of a certain lot, situate, &c., bounded, &c., and that, in a conversation, &c., (as in the first count,) the defendant, to induce the plaintiffs to purchase the said lot, did affirm and represent, that he was the owner of the lot in fee, and did, also, fraudulently, affirm and represent, that whosoever was the owner of the lot, would, by an application to the commissioners of the land office, receive a grant for so much land under the water of the *Hudson* river, as lay adjacent to the lot, to wit, 264 feet in extent, and that he would assist the plaintiffs in procuring such grant, in case they became the purchasers of the lot, and the plaintiffs giving faith, &c., agreed to purchase, &c., and the defendant granted, &c., together with all and singular, &c. ; that the plaintiffs, on the 1st of *January*, 1815, did apply to the commissioners of the land office, for a grant of the land under water, according to the provisions of the act in such case made, and the application was refused, the commissioners having no right to grant the same, which the defendant well knew ; that it had, on the 1st of *June*, 1743, been duly granted to *Alexander Colden*, his heirs and assigns, which the defendant well knew ; that the right to the same was out of the people of the state, and was not vested in them, which the defendant well knew ; and, that all the right of *Alexander Colden* was vested in *Cadwallador R. Colden*, and not in the defendant, nor any person under him, which the defendant well knew. And so, &c. The plaintiffs' damages were laid at 30,000 dollars.

There was a general demurrer to the whole declaration, and a joinder in demurrer.

ALBANY,
August, 1816.

MORELL
v.
COLDEN.

*P. Ruggles*, in support of the demurrer, contended, **1.** That the false affirmation, and fraudulent concealment, alleged in the plaintiffs' declaration, related wholly to property which formed no part of the subject matter of the contract set forth, and could not, therefore, be a ground of action. There was no averment of want of value, or deficiency in quality of the land sold. If the land covered with water was an appurtenant, it passed with the land sold; if not, there was no fraud.

**2.** The affirmations charged to be false and fraudulent, were nothing more than a statement of a public act of the legislature, equally known to both parties.

**3.** The transfer of the title from the state was a matter of public notoriety, and had ever been a matter of record, and about which there could not be that kind of concealment which, in contemplation of law, amounts to fraud. The vendee must take care to have a warranty; otherwise, he buys at his peril. The maxim is, *caveat emptor.**

**4.** The alleged concealment consisted in an omission merely to inform the plaintiffs, whether the state or an individual owned the land under water, which, in either case, could only be obtained by the plaintiffs, by purchase, if at all; and there is no averment that they could not obtain it from the present owner, with equal ease, and on as good terms, as from the state, nor is it averred that they have not already obtained it.

**5.** The declaration affords no rule for estimating the damages, in case the plaintiffs are entitled to recover.

**6.** The whole contract, both as to the subject to be conveyed, and the consideration, was reduced to writing and contained in the deed, which cannot now be varied by any parol evidence.†

*Sugd. L. of Vend. 195. Cre. James, 196.

† 3 Johns. Rep. 506.

*Burr*, contra. The court must take into consideration all the proof that can be given in evidence under the averments. A grant, or patent, for land, on record, is not notice to a purchaser.

Though a false affirmation as to the value of the thing sold, may not afford ground for an action, yet a false representation of facts, which has led the purchaser to make an erroneous estimate of the value, does furnish foundation for an action by the purchaser. Thus, in case of a false affirmation as to the

ALBANY,
August 1816.

MONELL
v.
COLDEN.

*1 Salk. 211. 2
Ld Raym 1118.
1 Sid 146.
†1 Vesey, 127. 3
Atk. 383. 6 Mod.
34. 3 Johns.
Rep. 71.

rent, which lies within the knowledge of the vendor, a remedy lies against him for the fraud.*

So, a fraudulent concealment is ground for an action by the party injured; and the rule is the same, in regard to fraud, in law, as in equity.†

THOMPSON, Ch. J., delivered the opinion of the court. The declaration in this case contains six counts, varying in some small, and mostly immaterial, circumstances, the plaintiffs' cause of action. To this declaration there is a general demurrer, which admits the facts therein stated. If, therefore, any of the counts set forth facts sufficient to make out a cause of action, the plaintiffs are entitled to judgment. Without noticing each count separately, it will be sufficient to state, generally, that the facts alleged are, substantially, that a conversation was had between the parties relative to the purchase, by the plaintiffs, of the defendant, of a certain piece of land at *Newburgh*, adjoining the *Hudson* river, upon which conversation the defendant, *for the purpose of inducing* the plaintiffs to purchase the same, and to enhance the value thereof, fraudulently represented, that he was the owner of land, and, as such, had, by the laws of the state, the privilege of having a grant or patent for the land under the water, adjoining to the land so to be sold; and that, if the plaintiffs would purchase the land, he would aid and assist them in obtaining a grant for the land under the water. The declaration states that, upon such conversation, an agreement for the purchase was made, for the land, described by metes and bounds, and all the privileges and appurtenances to the same belonging. It is then averred that, many years before, a patent for the land under the water had been granted to one *Alexander Colden*, and was then vested in one *Cadwallader R. Colden*, and was not in the people of this state, or in the defendant, *and that all this was well known to the defendant*. It is also averred, that the principal inducement with the plaintiffs to purchase the land, was to obtain the water privilege, for the purpose of erecting storehouses and docks, and that the value of the land, without this privilege, was very greatly diminished; and that the plaintiffs had, pursuant to the directions of the act for that purpose, made application to the commissioners of the land office, for a grant of the land under the water, opposite to the

land so sold, and were refused the same by reason of the previous grant to *Alexander Colden.*

These facts being admitted by the demurrer, as true, I cannot see why they do not show a good cause of action. They show a most palpable fraud practised upon the plaintiffs, in the sale of the land, and by which fraud they have been essentially and materially injured. If no representation had been made on the subject, by the defendant, both parties would have been equally chargeable with a knowledge of the law, and the public records of the state. But, according to the declaration, the defendant, knowingly and falsely, misrepresented the fact, with respect to the situation of the land under the water, and, if so, he is chargeable with all the damages resulting from such false representation. That a deed has been given, cannot affect the plaintiffs' claim for the fraud. The false representation was not respecting any thing to be included in the deed, but with respect to a privilege which the plaintiffs were to acquire, in consequence of owning the land on the shore adjoining the river. The law, which is a public statute, prohibits the granting a patent for land under the water, except to the owner of the land on the shore adjoining thereto. And it is a fact of public notoriety, that such grants are made almost as matter of course, and without any consideration, except the mere patent fees. One count in the declaration contains an averment that the land, without this privilege, would not be worth more than 500 dollars, but that, with the privilege, it would be worth 30,000. The declaration gives a rule of damages as certain as any declaration in such case, founded upon fraud, can give. It states the facts, and the damages arising therefrom are matter of inquiry upon the trial. What is the value of the privilege of which the plaintiffs are deprived, may be matter of uncertainty; but the value of the land sold, independent of this privilege, may be easily ascertained, and the difference between that, and the price paid, ought, at all events, to be refunded. But the extent of the damages, or the rule by which they are to be ascertained, are not now subjects of inquiry. If the action can be sustained under such a state of facts, that is sufficient for the present; and, in my judgment, it can be maintained. The facts, as stated, clearly show, that by the false and fraudulent misrepresentations of the defendant, the plaintiffs have been deceived, and materially

injured. (6 *Johns. Rep.* 182.    13 *Johns. Rep.* 226.    4 *Taunt.* 786.)  I am, accordingly, of opinion, that the plaintiffs are entitled to judgment.

Judgment for the plaintiffs.