Hubbard, J.
On the opening of the case to the jury, and on the offering of a witness to prove the misrepresentations alleged, the defendant’s counsel objected to the admission of the testimony, because the representation was not in writing. A second objection was also taken, that the action, as set forth in the plaintiffs’ declaration, could not be maintained at common law. For the purpose of settling the questions, the evidence was rejected, and a nonsuit entered by consent. After the entry was made, the plaintiffs moved for leave to amend their declaration.
The first objection rests on the supposed variance between the Rev. Sts. c. 74, § 3, and the St. of 1834, c. 182, § 5. The latter section is as follows: “ No action shall be brought whereby to charge any person upon or by reason of any representa *249 tion or assurance made or given, concerning or relating to the character, conduct, credit, ability, trade, or .dealings of any other person, to the intent or purpose that such person may obtain credit, money or goods thereupon, unless such representation or assurance be made in writing, signed by the party to be charged therewith.” The 3d section of the 74th chapter of the Rev. Sts. varies from it in this respect, by omitting the words “ to the intent or purpose that such person may obtain credit, money or goods thereupon.” Our first impression was, that the framers of the revised statutes intended to limit, still farther than the act of 1834, the rights of persons suing for injuries occasioned by false representations; and that thereafter, to make such representations actionable, they must be in writing. But on more reflection, we think that no such alteration was intended, and that the section of the revised statutes is not applicable to cases other than those where the intent or purpose of the representation is to enable a third person to obtain credit, money or goods, by means of it.
The motive for leaving out the clause contained in the St. of 1834 is not obvious; and as no reason for doing it is assigned by the learned commissioners, in their report, we presume they considered the clause superfluous, and therefore omitted it. We are of opinion that both sections are to receive the same construction, and consequently that a fraudulent representation, not affecting the title of a third person to credit, is not within the statute, and need not therefore be in writing
As to the objection that the action, as stated in the plaintiffs’ writ, cannot be maintained at common law, it is not necessary to consider it at this time, as the plaintiffs have moved to amend their declaration.
The motion to amend was objected to, as having been made after the nonsuit was directed. But we are of opinion that, under the circumstances of the case, it was in sufficient season. The nonsuit is taken off, and a new trial granted; and the plaintiffs have leave to amend their declaration.
The plaintiffs filed tne following amended declaration: “ For *250 that the plaintiffs, on the 23d of February 1833, at Lenox, were desirous of purchasing ’a manufactory for the tanning and making of leather, and on said day inquired of the defendant, and asked him to give them information, and to tell them when and where, and on what terms, they could purchase such manufac-tory, and the defendant, intending to deceive and defraud the plaintiffs, and to induce them to purchase a manufactory for the tanning and making of leather, situate in Worthington in the county of Hampshire, and owned by Thomas D. Wasson, and to give therefor a much greater sum in money than it was worth, did assert and affirm to the plaintiffs, that there was such a manufactory in said Worthington, and owned by said Thomas D. Wasson, and that Wasson was ready to sell the same, and that it could be purchased for the sum of $4000; that said Wasson purchased said manufactory of James Wasson; that the defendant was well acquainted with said Thomas D. Wasson, and that the defendant could and would aid the plaintiffs in making the purchase: And the plaintiffs aver that the defendant did, wrongfully and deceitfully, falsely, fraudulently and knowingly represent, assert and affirm to the plaintiffs, that the said manufactory of said Thomas D. Wasson was such an one as they wanted; that it was worth the sum of $4000, and was cheap at that price; that said Thomas D. Wasson paid said James Wasson, as the consideration therefor, the sum of $4000; and that it could be purchased of said Thomas D. Was-son for the same sum for which he purchased the same of said James Wasson: And the plaintiffs, confiding and giving credit to such false and fraudulent representations, so made as aforesaid, and believing the same to be true, and not knowing to the contrary, and not knowing the value of said property, did after-wards, to wit, on the last day of February aforesaid, purchase and receive from said Thomas D. Wasson a conveyance of said manufactory for the tanning of leather, and then and there did pay said Thomas D. Wasson the sum of $4000 for the same: Although there was a manufactory, owned by said Thomas D., for the tanning of leather, which he purchased of said James Was-son, yet the plaintiffs aver, in truth and in fact, that said man *251 ufaetory was not worth said sum of $4000, nor did said Thomas D. ever pay the said sum of $4000 for the same to said James; but, on the contrary, said Thomas D. paid said James, for the same, the sum of $3000, and no more, and said manufactory was not worth, at the time of said false representations, or at the time said Thomas D. purchased it, or ever after, so much as $3000; all which the defendant well knew, at the time of making such false and fraudulent affirmations; and so said defendant wrongfully and deceitfully encouraged and persuaded the plaintiffs to purchase said manufactory, and give and pay therefor a much larger sum than it was worth to said Thomas D. Wasson, viz. the sum of $4000; and by such false and fraudulent representations and affirmations, the plaintiffs have been greatly injured by the defendant: And they further aver, that they had no knowledge of said fraud, until three months next preceding the date of their original writ.”
At the last May term, a new trial was had before Hubbard, J., who made the following report thereof: To prove the false representations of the defendant, the plaintiffs offered Andrew B Medbury, as a witness, who stated that Daniel Medbury, one of the plaintiffs, was his father ; and Arnold B. Medbury, another of the plaintiffs, his brother; that in the winter of 1832 — 3, the said Daniel and Arnold B. agreed to purchase a tannery, and form a partnership in the business of tanning; that the witness, who did not come of age till the spring following, was to be an agent of the firm, and receive $400 a year, with the right, if he chose, of becoming a partner, when of age, and re ceive, as compensation for his services as agent, the profits which might have been made, instead of $400 : That he and his said brother made inquiries of the defendant, who, in reply, made the misrepresentations, alleged in the plaintiffs’ declaration, about the time therein stated; that the purchase of the tannery was made, February 23d 1833, and possession taken in April following, and the witness became an agent of the firm, on the terms aforesaid, and so continued for a year; that he then bought his father’s interest in the concern, being one fourth part, at the price which his father had paid, ($1000,) *252 taking his profits and incurring his losses, up to that time, “ so as to stand precisely in his father’s tracks; ” and that, at the same time, his father made him a present of $ 500, by deducting that sum from the notes given to his father for the purchase money. The witness stated that he had no interest in this suit, though it was brought at his request, and had been carried on by him; but that he had informed the plaintiffs of what he had done, and that they had ratified it, and had become responsible to him for costs, and that there was no agreement between him and his father as to the disposition of the avails of the suit.
Upon this statement of the witness, it was objected by the defendant’s counsel, that he was not competent, having an interest in the result of the suit. It was further objected, that upon the facts above stated by him, his father had suffered no damage, and that the action could not be maintained by the present plaintiffs. Both these objections were overruled.
The plaintiffs offered evidence to show that the tannery was covered with snow, and the water wheels and machinery frozen up, at the time of the misrepresentations, and on the 23d of February 1833 '; that the defendant told said Andrew and Arnold B., when said misrepresentations were made, that if they went to examine the tannery, they could not estimate its value, because it was covered with snow, &c., and that they had better not go to see it; that if they would go home, and let him go over to Worthington, he could get the tannery for the same sum that Thomas D. Wasson had paid James Wasson for it; that if they should go over, they had better not state to said Thomas D. their business, but keep still about it, as he would ask more, and the defendant could get it on better terms than they could; and that they told the defendant to buy it, if he could get it for what said Thomas D. paid for it: That said Andrew, Arnold B. and Andrew B. agreed to go to Worthing-ton and see the premises, and say nothing about it; but that they were prevented, by a snow storm, from going, and therefore left the defendant to accomplish _ the business: That when the defendant and some of the plaintiffs were at Worthington, on the 23d of Februan 1833, when the plaintiffs took a deed *253 of the tannery from Thomas D. Wasson, and gave him their notes therefor, the defendant told a person there, who knew the sum that said Thomas D. paid for it, that he (the defendant) did not wish the plaintiffs should know that they were paying more than said Thomas B. had paid for it: That the defendant told said Thomas B. that he had ascertained that the plaintiffs were abundantly able to buy, and desired him to keep perfectly still, and let the defendant manage the business, and he would make #1000 for said Thomas B., in the operation.
It was in evidence, that one of the plaintiffs was at the tannery, before the purchase, and that on the day when the deed thereof was executed, all the plaintiffs were at Worthington; but it did not appear that they examined the tannery, or that they could have ascertained its condition or value, if they had examined it.
Evidence as to the condition of the tannery, its dilapidated state, and its value, was received, upon the question of damages.
It was contended, on behalf of the defendant, 1st, that no action could be maintained upon the allegations in the writ; and 2d, that if it could be maintained at all, the jury must find that the misrepresentations were such as would mislead the plaintiffs in the exercise of ordinary caution and prudence.
The judge ruled, that the general principle of the law touch ing actions of this character, as recognized in this Commonwealth, was this: That if one makes a representation, which is not true, and another, acting upon the faith of its being true, is injured by it, he has his remedy against the party so making the false representation: And it was stated to the jury, that if Thomas B. Wasson purchased the tannery of James Wasson for #3000, and it was worth no more; and if the deed and notes aforesaid were designedly made to give an appeárance of a bona fide sale for #4000 ; and the defendant, knowing the same, falsely and fraudulently represented to the plaintiffs, that said Thomas B. bought the tannery of said James for #4000, and that he knew it, and was well acquainted with the property, and that it was worth that sum; and the representation was made to the plaintiffs in such manner as to induce them to for *254 bear making further inquiries, which, for their own security, they would otherwise have done; and if, in consequence of such representation, they purchased the tannery, and had sustained a direct injury by reason of it; then the plaintiffs’ action was maintained: Nevertheless, if the jury should believe that á common man would not be deceived by such representations as the defendant made, as to the value of the property, on seeing the same, and that the purchase was a foolish, reckless one, on the part of the plaintiffs, then the present action could not be maintained.
R. A. Chapman, for the defendant.
Andrew B. Medbury, by the bargain made with his father, was subject to the liabilities, and entitled to the avails of the suit, as his father would have been, if he had retained his interest in the premises, and was therefore interested in the suit. He was also interested that the plaintiffs should recover a fund to cover costs. Pond v. Hartwell, 17 Pick. 269.
A joint action does not lie in a case like this. Baker v. Jewell, 6 Mass. 462. And if it would lie, generally, yet these plaintiffs cannot join, because, one of them, the father, has sustained no injury. He sold his part of the tannery for the sum which it cost him.
No action lies on the allegations in the declaration. The two false representations of the defendant were, that the tan - nery was worth $4000, and that the owner gave that sum for it. But swollen statements of value are no cause of action ; except, perhaps, in the case of rent. Harney v. Young, Yelv. (Amer. ed.) 21, a, &f note. Sugd. Vend. 3. Did then the assertion, that the owner paid $4000, lay a ground of action? Former cost is no test of present marketable value, nor is supposed to be, by any man of common discernment. Nor do false affirmations as to such cost, or as to former offers, render the affirmant 'liable to an action. 1 Rol. Ab. 101. Yelv. ubi sup. Davis v. Meeker, 5 Johns. 354. Cross v. Peters, 1 Greenl. 389. Vernon v. Keys, 12 East, 632. Baily v. Merrell, 3 Bulst. 95. The People v. Williams, 4 Hill, 1. 1 Cowen’s Treatise. (2d ed.) 316.
*254 The jury found a verdict for the plaintiffs, which is to be set aside, and a new trial granted, if either of the above rulings or instructions was wrong; otherwise, judgment is to be rendered on the verdict.
Lobdell v. Baker, 3 Met. 469, will be relied on by the plaintiffs. But in that case, the representation was concerning the quality of a note, and was made by the party who negotiated it. In the case at bar, the representation complained of was made by a third person. And all the cases, in which third, persons have been charged on their representations, were for representations of another’s credit.
The case of Commonwealth v. Hunt, 3 Met. Ill, shows that the plaintiffs’ declaration does not contain averments sufficient to support an action
Bishop & Byington, for the plaintiffs.
The declaration avers actionable fraud and damage, which are the gist of actions of this kind, and is sufficient, though the particulars of the defendant’s conduct are not very minutely set forth. Tryon v. Whit-marsh, 1 Met. 1, 9. Hazard v. Irwin, 18 Pick. 105. Page v. Bent, 2 Met. 374. Matthews v. Bliss, 22 Pick. 48. War-dell v. Fosdick, 13 Johns. 325.
Probably the, action could not be maintained on the bare averment of the defendant as to the value of the tannery; but for his false and fraudulent affirmation of a fact, by which the plaintiffs were deceived and injured, the action well lies, though that affirmation did not relate to the credit of a third person. Pewiriss v. Austen, 6 Taunt. 522. Benton v. Pratt, 2 Wend. 385. Chit. Con. (5th Amer. ed.) 681,682. Lobdell v. Baker, 1 Met. 193, and 3 Met. 469, and cases there cited. 1 Story on Eq. §§ 192, 193, 197. And two or more, who are thus deceived and injured, may join in a suit to recover damages. Monell v. Colden, 13 Johns. 395. Patten v. Gurney, 17 Mass. 182. The dictum to the contrary, in 6 Mass. 462, was extrajudicial ; and the reason there given, viz. that one might be deceived, and not the other, does not apply to the case at bar, where all the plaintiffs were alike deceived.
Andrew B. Medbury, on his statement, had no legal interest in the suit. His acts in bringing and prosecuting the suit for the plaintiffs, as their agent, had been ratified by them ; and he made no agreement with his father respecting the avails of the suit.
Hubbakd, J. It is objected that Andrew B. Medbury was not a competent witness, on account of his interest in the event of the suit. The facts upon which the objection rests were these : The suit was brought at the request of the witness, ana has been carried on by him. But the witness also testified that he informed the plaintiffs of it, who have ratified his acts and agreed to become responsible for the costs.
These facts do not make him an interested witness. The plaintiffs, having adopted his acts in commencing and carrying on the suit, have constituted him their agent; and having made themselves responsible to him for the costs, he is not exposed to loss if the plaintiffs fail in their action. It has been urged that in the event of a recovery, a fund would be created for the payment of the costs; but over such a fund the witness would have no control, nor could he apply it to his own benefit. The witness is but the agent of the parties, and the objection goes only to his credibility.
It is also contended, that having purchased his father’s quarter part of the premises, for the same sum the father gave, and becoming entitled to the profits, and agreeing to bear the losses, he is himself entitled to receive the one fourth part of the avails of the judgment, if one should be recovered by the plaintiffs in this suit. But it is testified by him, that there had been no agreement entered into between his father and himself, as to the disposition of such avails. It is clear, then, that he has no legal right to such one fourth part. He did not contract for this claim ; he has paid nothing for it; he has no understanding with his father in relation to it. He can demand nothing, if his father succeeds in the case. He is not, then, beneficially interested in the plaintiffs’ recovery.
But it is further argued that the father, having sold out his share of the property for the same amount which he gave, has sustained no loss, and so there can be no recovery by the pres *257 ent plaintiffs. But this suggestion, though plausible, is not sound. What the party sold the property for, is not the rule by which to measure the damages; otherwise, it might make the question of fraud to depend upon the rise or fall of the property in the market, upon fluctuations in the value, arising from causes in no way connected with the fraud complained of. As well might an underwriter contend that the insured has sustained no injury, because his goods, though partially damaged by a peril insured against, have sold, even in their damaged state, for more than their actual cost. If the father, throügh fraud practised upon him, paid a higher price than the estate was worth, and the fraud was actionable in its character, then he is entitled to recover for the injury occasioned by such fraud, whacever disposition he afterwards made of the property; whether he sold it or gave it away.
It has also been argued, that this action cannot be maintained by the four plaintiffs jointly; that the injury is distinct, and that the parties, if they have a remedy, must resort to separate actions ; and the case of Baker v. Jewell, 6 Mass. 462, is relied upon in support of this position. In that case, it is stated that the action is substantially founded on a tort, and is in its nature several, and that one of the parties might have been deceived and the other not. The decision, however, did not turn upon this point, but upon the fact that the defendant had settled with one of the two parties injured, and so there was a severance of the cause of action. And it is also to be observed, that the Bakers were purchasers as tenants in common. The present case is clearly distinguishable from that, and is supported by the authority of Patten v. Gurney, 17 Mass. 182. In that case, it was decided that an action lies for copartners in trade against two or more, also copartners, for falsely and fraudulently recom mending an insolvent person as worthy of credit, whereby the plaintiffs were induced to trust him with goods, which the defendants attached, and in consequence the plaintiffs lost their debt. The same objection was taken as in the case at bar, and Baker v. Jewell was relied upon, among other authorities cited. But the court held, as the plaintiffs were jointly inter *258 ested in the damages, it was their right to unite in the action. So here, these plaintiffs were partners in the premises purchased, both as to the real and the personal estate. The real estate was subject to their partnership debts, before either plaintiff could claim a separate share of it, or the widow of either her dower. The purchase being made in partnership, the plaintiffs have sustained a joint injury from the defendant, and they are entitled to join in their suit against him. 10 Moore, 451.
No objection is made to the instructions given to the jury, and no motion for a new trial has been made, on the ground of its being a verdict against evidence; but the defendant moves in arrest of judgment, on the ground that no action can be maintained upon the allegations in the writ. The allegations are in substance these ; that the plaintiffs, wishing to purchase a tannery for the purpose of carrying on a joint business in the making and vending of leather, inquired of the defendant, if he could inform them where they could purchase such an establishment ; that the defendant, intending to deceive and defraud them, and to induce them to purchase a tannery in Worthing-ton, belonging to one Thomas D. Wasson, and to give a much greater sum for it than it was worth, falsely asserted and affirmed to them, that he knew of such a tannery as they wanted, belonging to Thomas D. Wasson, who was ready to sell it, and that it could be purchased for $4000, being the same sum which said Thomas D. paid one James Wasson for it; and that he would aid the plaintiffs in making the purchase; at the same time knowing that Thomas D. Wasson paid only $ 3000 for it, and that it was not worth that sum at the time when Thomas D. purchased, nor at the time of his (the defendant’s) making the false representation ; that he wrongfully and deceitfully encouraged them to make the purchase, and pay for it a much larger price than it was worth, namely, $4000; and that the plaintiffs, confiding in his false assertions and affirmations, and believing them to be true, and being ignorant of the value of the property, made the purchase, &c. The evidence fully sustained all the allegations in the writ; but the question is, whether these facts, as thus alleged and proved, are in themselves actionable.
*259 The action on the case for deceit is one well known; and, for a long series of years, has been maintained in the English courts. It has also been sustained by us as an efficient means for the punishment of frauds, and for the protection of the weak and the ignorant against the designs and artifices of the crafty.
The leading case, in modern times, on the subject of false affirmations made with intent to deceive, is that of Pasley v Freeman, 3 T. R. 51, in which it was decided that a fa.se affirmation, made by the defendant with intent to defraud the plaintiff, whereby the plaintiff received damage, was the ground of an action upon the case in the nature of deceit; and that it was not necessary that the defendant should be benefitted by the deceit, or that he should collude with the person who received the benefit. This case, though much contested, and though often attempted to be shaken, has received the sanction of successive decisions in Westminster Hall and in the courts of different States in this country. It has, indeed, been modified by the act of 9 Geo. 4, c. 14, commonly called Lord Tenterden’s act, so far as to require the assertions, in regard to the credit of a third person, to be in writing, before the party can be charged on his false affirmation; and the law has been modified in like manner here, by St. 1834, c. 182, § 5, and by the Rev. Sts. c. 74, § 3. The great principle, however, on which that case rests, has not been disturbed, but is, indeed, sanctioned by the very statute provisions and limitations in respect to it.
But in actions on the case for deceit, founded upon false affirmations, there has always existed the exception, that naked assertions, though known to be false, are not the ground of action, as between vendor and vendee; and in regard to affirmations and representations respecting real estate, the maxim of caveat emptor has ever been held to apply. When, therefore, a vendor of real estate affirms to the vendee that his estate is worth so much, that he gave so much for it, that he has been offered so much for it, or has refused such a sum foi it; such assertions, though known by him to be false, and though uttered with a view to deceive, are not actionable *260 They are the mere affirmations of the vendor, on which the vendee cannot safely place confidence, and will not excuse his neglect in not examining for himself, and ascertaining what the facts are, and what credit is to be given to the assertions. But even this is qualified by one of .the more ancient decisions : As where a vendor had falsely affirmed as to the amount for which the estate rented, and had induced a person to give a higher price for the estate in consequence of such false affirmation respecting the rent, there an action was held to lie, on the ground that it was a matter within his own knowledge, and the tenant might not disclose the amount of rent paid by him. Ekins v. Tresham, 1 Lev. 102: 1 Sid. 146. And so fraudulent misrepresentations of particulars in relation to the estate, which the buyer has not equal means of knowing, and where he is induced to forbear inquiries that he otherwise would have made, are not to be viewed in the light of assertions gratis dicta; and therefore, where damage ensues, the party guilty of the fraud will be liable for the injury sustained.
I do not think it necessary to go over, in detail, the authorities cited by the counsel for the defendant, they having often been the subject of comment; but I presume I am safe in affirming, that the greater part, if not all, the cases cited, are those of false affirmation by the vendor to the vendee, where the maxim caveat emptor applies, and not those resting upon the false representations of a third person with regard to the value of the property. And the distinction between the two cases is marked and obvious. In the one, the buyer is aware of his position he is dealing with the owner of the property, whose aim is to secure a good price, and whose interest it is to put a high estimate upon his estate, and whose great object is to induce the purchaser to make the purchase; while in the other, the man who makes the false assertions has apparently no object to gain; he stands in the situation of a disinterested person, in the light of a friend, who has no motive nor intention to depart from the truth, and who thus throws the vendee off his guard, and ex poses him to be misled by the deceitful representations.
In the present case, we think the averments in the declara *261 tion would not have supported an action, if the false representations had been made by the vendor to the vendees. But the representations were made by a third person, apparently disinterested, and who proposed to aid the plaintiffs in making the purchase, and to procure the estate for them for a price which he stated he knew that it cost, and which he affirmed it was worth. Such false affirmations and representations, having been made by a third person, with the intent to defraud, we hold are actionable; and though the declaration might have contained a more full averment of the facts expected to be proved, yet we are of opinion that sufficient was stated to maintain the action, and to let in the other proofs connected with and growing directly out of the assertions set forth in the declaration.
For these reasons, the motions for a new trial, and in arrest of judgment, are overruled, and there must be

Judgment on the verdict.