## RAMBO *v.* PATTERSON.

133  655
146  ¹456

1. CONTRACTS—FALSE REPRESENTATIONS—EVIDENCE.

Testimony as to false representations made to induce plaintiff to enter into a contract is admissible, in an action to recover money paid thereon, as against an objection that it tends to vary the terms of the contract, which was in writing.

2. SAME—WAIVER.

An agreement for the purchase by plaintiff of an interest in

defendants' business gave him the right to terminate the arrangement, and to have his money refunded, in certain contingencies. He soon became dissatisfied, and an agreement for a settlement was entered into, which defendants failed to carry out; whereupon plaintiff at once brought an action for fraud and deceit in inducing the original agreement. *Held*, that he had not waived his right to bring such action.

Error to Wayne; Brooke, J. Submitted June 2, 1903. (Docket No. 4.) Decided June 30, 1903.

Case by William Rambo against William L. Patterson and John B. McKenney for fraud and deceit. From a judgment for plaintiff, defendant Patterson brings error. Affirmed.

*Fink & O'Connor*, for appellant.

*Jay Fuller*, for appellee.

GRANT, J. Defendants carried on a real-estate business in the city of Detroit. Plaintiff, an inexperienced country youth of 24 years of age, purchased of the defendants a one-third interest in the business, for which he paid $300. A written contract was entered into. Plaintiff brought this suit to recover the money so paid, on the ground that he was induced to enter into the contract under false and fraudulent representations of fact. According to the plaintiff's testimony, these representations were material, and were intentionally and maliciously false. Defendant Patterson denied them. Defendant McKenney was not sworn as a witness. It is not contended that the representations which plaintiff testified were made by the defendants are not sufficient of themselves to justify a recovery in a proper case, but they interpose two defenses, viz.: (1) That the contract was reduced to writing, and that the written contract must control; (2) that plaintiff did not act promptly, and by his conduct has waived the fraud.

1. This is not an attempt to vary the terms of a written contract, but to maintain that it was obtained by fraud. Counsel for defendants cite *Bush* v. *Merriman*, 87 Mich. 268 (49 N. W. 567), and *Church* v. *Case*, 110 Mich. 624 (68 N. W. 424), to support their contention. The distinction in those cases is well drawn.

"Where parol evidence is offered to show that the written contract is void, or not of binding force, it is admissible; but if the object be to prove that it was intended to mean something different from what its language imports, it is inadmissible." *Atwood* v. *Gillett*, 2 Doug. (Mich.) 218.

It is true that plaintiff claims that the written contract, which he testified was read to him by one of the defendants, and then, under a frivolous excuse, was retained by them for a week before delivery to him, was not the contract verbally agreed to at the time he paid the money. Plaintiff testified that, when he told defendant Patterson that the written contract was not the one agreed to, Patterson did not deny it, but replied, "You are caught, and will have to stand it." The contract provides:

"It is also understood that such business is of such a problematical character that it is difficult to determine amount of profits to be made, and that first parties hold out no inducements and make no representations as to what said business has made, is making, and make no promises of what it may become in the future; and, save for the experience of one of said first parties, their lists of opportunities and business chances, and the good will of the aforesaid business, they contribute no further capital or assets to said copartnership business, and make no representations that they have any capital at the present time; and that the said W. Rambo, in so buying into said copartnership business, acts entirely upon his own judgment, and takes his chances upon the future of the business."

It is urged, and with some reason, that this singular provision was one of the means entered into by these defendants to carry out their conspiracy to defraud plaintiff. In reply to special questions, the jury found as follows:

133 MICH.—42.

"*Q.* Did Patterson, according to the evidence submitted to you, at any time conspire with McKenney to cheat and defraud plaintiff?

"*A.* Yes.

"*Q.* Did Patterson at any time intentionally and fraudulently misrepresent facts concerning the business to Rambo?

"*A.* Yes."

We think there was ample evidence to sustain the verdict upon this branch of the case.

2. The contract also contained these two provisions:

"It is also hereby agreed that, if the share of profits of the second party amounts to $40 per month or more during the next three months, then this is to be an absolute and binding agreement, which cannot be repudiated or avoided for any reason. If said profits of second party do not amount to $40 per month during the next three months, then second party can, at his option, at any time give first party thirty days' notice in writing, and at the end of thirty days first party will return to second party said $300.

"If during the next three months first parties are dissatisfied with second party for any reason, they may, upon returning said $300 to said second party, and giving second party thirty days' notice, terminate said copartnership with said second party."

Substantially no business was done by the firm for the month after the contract was made. Meanwhile plaintiff, who had put all his money into this firm, desired to make some amicable arrangement to get out. They therefore made an agreement on the 30th day of November, 1901, settling their differences, plaintiff agreeing to take $75 and release all claims against the defendants. Fifty dollars was paid down. This agreement contained the following provision:

"Fifty dollars to be paid this day, and $25 to be paid on or before December 10, 1901. Until said $25 is paid, George E. Eckert is to hold this agreement and second party's articles of copartnership until December 10, 1901, and at that time, if said $25 is paid, to deliver to first parties the articles of copartnership and second party this

agreement. If said $25 is not paid by that time, second party is to have his articles of copartnership back, and said $50 is to be forfeited to second party, and second party shall still hold his interest and membership in said copartnership, and this agreement shall be null and void."

Whether the $25 was tendered was the disputed question, and was submitted to the jury, who, in reply to a special question, found that it was not. The court instructed the jury that, if they found that this $25 had been tendered, the plaintiff could not recover. We think the plaintiff acted with sufficient promptness, and had not waived his right of action by his conduct. He obtained a verdict of $250, with interest, and it is affirmed.

The other Justices concurred.