PAXTON-ECKMAN CHEMICAL COMPANY *v.* MUNDELL.

[No. 9,053. Filed May 17, 1916.]

1. SALES.—*Fraud on Buyer.*—*Remedies.*—*Right to Rescind.*—Where one has been fraudulently induced to enter into a contract for the purchase of property, he may retain the property and bring an action for the damages caused by such fraudulent representations, or he may rescind the contract. p. 50.

2. SALES.—*Fraud.*—*Action.*—*Liability.*—*Complaint.*—Where it was clear from the allegations of the complaint that plaintiff proceeded upon the theory that he was damaged by the fraudulent conduct of defendant in inducing him to purchase certain merchandise, defendant's liability could not be measured by the terms of the contract of sale, although a copy was made a part of the complaint. p. 50.

3. CONTRACTS.—*Fraud.*—*Remedies.*—It is the rule, subject to certain exceptions, that one who has been induced by fraud to execute a contract and is damaged thereby may make such fraudulent conduct the basis of an action, or he may set the same up as a defense to an action on the contract. pp. 50, 51.

4. FRAUD.—*Contracts.*—*Validity.*—Where a person designedly or knowingly causes a false impression to be entertained by another, and by reason thereof such other person is induced to enter into a contract to his detriment, and which he otherwise would not have entered into, such contract is so impressed with fraud as not to be sanctioned by the courts and enforced against the party defrauded. p. 51.

5. FRAUD.—*Remedies.*—*Effect of Contract.*—Where one has been induced by fraud to enter into a contract, provisions in the contract that all covenants, warranties and agreements are embodied therein and that no other agreement, stipulation or warranty will be recognized unless approved or accepted in writing, do not limit or restrict the party defrauded to the contract nor prohibit him from prosecuting an action for the damages he has sustained by reason thereof. p. 52.

6. FRAUD.—*Expressions of Opinion.*—While mere expressions of opinion concerning the value, utility, future use and the like of property do not as a general rule constitute actionable fraud, statements by a seller that experiments had been made with

stock powders, and that it had been ascertained that they would prevent hog cholera, were statements as to existing facts and included matters with which the buyer was unacquainted, and, being false and relied upon by the buyer, constituted actionable fraud.    p. 52.

7.   APPEAL.—*Questions Presented.—Motion for New Trial.*—Alleged error in overruling a motion for new trial presents no question where it appears that the motion was not filed in time.    p. 55.

From Clinton Circuit Court; *Joseph Combs,* Judge.

Action by Joseph O. Mundell against the Paxton-Eckman Chemical Company.   From a judgment for plaintiff, the defendant appeals.   *Affirmed.*

*A. H. Murdock* and *Strawn & Robinson,* for appellant.

*Kent & Ryan,* for appellee.

MORAN, J.—Appellee purchased of appellant a large quantity of stock powders, and in the purchase thereof he alleges in his complaint that he was damaged by reason of fraud and deceit being practiced upon him by appellant.   Upon issues being joined by an answer in general denial addressed to the complaint and a trial had thereon, a verdict was returned in favor of appellee in the sum of $1,750.   From a judgment on the verdict, appellant has appealed, presenting for consideration of the court the sufficiency of the complaint to withstand a demurrer for the want of facts.

The principal averments of the complaint are: That appellant corporation through its servants falsely and fraudulently represented to appellee that it manufactured a commercial compound which, when fed to hogs, would prevent them from contracting cholera, and when properly fed would cause hogs to fatten more easily than if not so fed; that it had made extensive research in order to produce a medicine that would prevent such

disease and kindred diseases to which hogs were
subject, and in the compounding of the P-E stock
powders its desire had been accomplished; that, in
order to induce appellee to purchase a larger amount
thereof, it was represented to him that such stock
powders would find a ready market among far-
mers and hog raisers, and appellee believed the
representations so fraudulently made, and pur-
chased 4,000 pounds in consideration of $400; that,
in order to induce appellee to make an additional
purchase, an experienced salesman called upon him
and, together with appellee, visited several farmers
and hog raisers in Clinton county, Indiana, and
the salesman represented to such farmers and hog
raisers that the powders he desired to sell had been
compounded after years of labor and experimenting
upon sick hogs and, by reason of such extensive
experimenting, it was found that a powder had been
finally compounded that would prevent hogs from
contracting cholera and kindred diseases and, when
properly fed, it would cause them to fatten more
easily; that such representations were falsely and
fraudulently made and by reason thereof, in less
than three days, such salesman sold some 800 pounds
of powders, and by such false and fraudulent rep-
resentations appellee was led to believe that the
powders could be easily retailed to farmers and hog
raisers at a profit of five cents per pound; that ap-
pellee believed by reason of the false and fraudulent
representations that the powders were so com-
pounded that they would prevent hog cholera;
that immediately after the sale of the powder
by the salesman to the farmers and hog raisers
aforesaid, an officer of appellant company called
upon appellee and represented to him that the
powder had been thoroughly tested, and he knew
that it would do all that was claimed for it; that

appellee being without knowledge as to the merits of the same relied upon the representations made, which were false and known to be such by the salesman and officers of appellant company, and through their representations appellee was induced to make an additional purchase of 40,000 pounds of such powder in consideration of $3,200; that the experiment claimed to have been made by appellant's salesman and officers as to the powder was not made and the same was not so compounded as to prevent cholera and kindred diseases of hogs, all of which appellant's salesman and officers well knew. At the time of the purchase of the powders by appellee, the following writing was entered into, which is made a part of the complaint:

"Memorandum of Agreement. This memorandum of agreement made and entered into this 27th day of October, 1911, by and between Paxton-Eckman Chemical Co. (Incorporated) of South Omaha, Nebr., of the first part and J. O. Mundell of Frankfort, Indiana, the second part, Witnesseth: That the first party has this day sold to the second party 40,000 pounds of the P-E Stock Powders, at the rate of 8 cents per pound, to be delivered F. O. B. South Omaha, Nebraska, and shipped by freight, for which the said second party has this day paid for in manner and form as follows, towit: Given his promissory note due nine months from date, secured by second mortgage. In consideration of the purchase of said powders under this contract the said first party the exclusive right to sell the P-E Stock Powders in Boone County, second party to have one of our Ford autos. The said second party agrees to diligently and energetically canvass and push the sale of said goods so furnished in the territory allotted to him. The said first party hereby reserves the right at any time, when said second party

does not sell said goods in satisfactory quantities, to cancel said contract and to enter the territory and sell out the stock of the said second party. The said first party is to have fifty per cent of the profits while assisting said second party. It is expressly agreed that all the covenants, warranties and agreements of the parties hereto are set forth in the contract, and that no other agreement, stipulation or warranty, verbal or otherwise, will be recognized unless approved or accepted in writing by the party of the first part. It is hereby made a condition precedent to the operation and non-continuation of this contract that the said second party shall handle said first paryt's produce exclusively. Any infringement of the above shall constitute a forfeiture of this contract. Signed in duplicate on the day above named. Paxton-Eckman Chemical Co. E. M. Eckman, J. O. Mundell. Witness J. C. Crouse, Approved."

The infirmities, which it is urged the complaint is subject to, may be subdivided as follows: (1) That the entire negotiations in regard to the sale and purchase of the stock powders were reduced to writing, and that appellee had an equal opportunity with appellant to know the contents of the writing before signing the same; that appellant's liability is measured by the written contract and appellee's remedy is confined thereto, and the contract containing none of the representations upon which appellee relies, the complaint is not sufficient; (2) that the law does not hold a party responsible for the expression of an opinion as to the merits of an article offered for sale, although the same be false, where no special confidence is reposed, and that the negotiations between appellant and appellee are brought within this rule by the allegations of the complaint.

It is a familiar principle of law that where a party has been fraudulently induced to enter into a contract for the purchase of property, he may retain the property and bring an action for the damages caused by such fraudulent representations, or he may rescind the contract. 20 Cyc 87; *Ohlwine* v. *Pfaffman* (1913), 52 Ind. App. 357, 100 N. E. 777; *Nyswander* v. *Lowman* (1890), 124 Ind. 584, 24 N. E. 355. Although a copy of the contract is made a part of the complaint, the action is based on fraud, hence appellant's first objection to the complaint that appellant's liability is measured by the contract and appellee's remedy is confined thereto is not well taken. It is clear from the allegations of the complaint that appellee proceeded upon the theory that he was damaged by the fraudulent conduct of appellant in inducing him to purchase the stock powders in the manner set forth in the complaint. Where a party is induced by fraud to execute a contract and is damaged thereby he may make the fraudulent conduct the basis of an action, or he may set the same up as a defense to an action on the contract. This rule, however, is subject to exceptions and "one of them occurs when the representations, though false, relate to the legal effect of the instrument sued on. Every person is presumed to know the contents of the agreement which he signs, and has, therefore, no right to rely on the statements of the other party as to its legal effect." *Clem* v. *Newcastle, etc., R. Co.* (1857), 9 Ind. 488; *Gipe* v. *Pittsburgh, etc., R. Co.* (1908), 41 Ind. App. 156, 82 N. E. 471. But with the exceptions we are not here concerned. The allegations of the complaint disclose that the representations on the part of the servants of appellant as to the

NOVEMBER TERM, 1915.    51

Paxton-Eckman Chem. Co. *v.* Mundell—62 Ind. App. 45.

merits of the article sold are so related to the execution of the contract that, had it not been for such representations and a belief that they were true, appellee would not have executed the contract. Where a person designedly or knowingly causes a false impression to be entertained by another and, by reason thereof, such other person is induced to enter into a contract to his detriment, and which he otherwise would not have entered into, such a contract is so impressed with fraud as not to be sanctioned by the courts and enforced against the party defrauded. *Ray* v. *Baker* (1905), 165 Ind. 74, 74 N. E. 619; *Leeds* v. *Boyer* (1877), 59 Ind. 289; *Howe Mach. Co.* v. *Brown* (1881), 78 Ind. 209; *Kemery* v. *Zeigler* (1912), 176 Ind. 660, 96 N. E. 950.

Appellant's objection to the complaint that the parties are confined to the contract seems to be well answered in the case of *Stanhope* v. *Swafford* (1890), 80 Iowa 45, in which the court said: "It will be observed that the action is to recover for false representations inducing plaintiff to make the trade. Now, if it be assumed that all the terms of the contract are embodied in the writing, and the false representations are not expressed therein, plaintiff may recover thereon, for the reason that the action is not upon the contract, but for false representations—a cause of action other and independent of the contract. If one should be enveigled or induced by false representations to enter into a contract of a sale of property, he could maintain his action on the false representations; and would not be required to sue on the contract of sale in order to recover his damages therefor." This principle finds support in numerous authorities. *Hines* v. *Driver* (1880), 72 Ind. 125; *Tyler* v. *Anderson* (1886), 106

Ind. 185, 6. N E. 600; *Hart v. Haynes* (1915),
150 Pac. (Kan.) 530; *Rambo v. Patterson* (1903),
133 Mich. 655, 95 N. W. 722; *Edward Thompson
Co. v. Schroeder* (1915), 154 N. W. (Minn.) 792;
20 Cyc 89; *Outcalt Advertising Co. v. Young Hard-
ware Co.* (1913), 161 S. W. (Ark.) 142; *J. I. Case
Threshing Mach. Co. v. Webb* (1916), 181 S. W.
(Tex. Civ. App.) 853; *Monell v. Colden* (1816), 13
Johns. 395, 7 Am. Dec. 390; *N. C. Antle & Bro. v.
Sexton* (1891), 137 Ill. 410, 27 N. E. 691; *Hurlbert
v. T. D. Kellog Lumber, etc., Co.* (1902), 115 Wis.
225, 91 N. W. 673; *Foss v. Newbury* (1891), 20
Ore. 257, 25 Pac. 669; 2 Elliot, Contracts §1651;
*Ward v. Wiman* (1837), 17 Wend. (N. Y.) 192.

The action for fraud impeaches the validity of
the contract, as a whole, therefore, the provisions in
the contract that all the "covenants, war-
ranties and agreements of the parties" are
embodied in the contract, and "that no other
agreement, stipulation or warranty, verbal or other-
wise will be recognized unless approved or ac-
cepted in writing" by appellant, do not limit or
restrict appellee to the contract nor prohibit him
from prosecuting an action in fraud for the dam-
ages he has sustained by reason thereof. *Hart v.
Haynes, supra; Edward Thompson Co. v. Schroeder,
supra; J. I. Case Threshing Mach. Co. v. Webb,
supra.*

This brings us to the second objection urged to
the complaint, viz., Were the representations
alleged to have been made material or were they
mere expressions of opinion? Mere expressions
of opinion concerning the value, utility,
future use and the like of property do not
as a general rule constitute actionable fraud,
as representations to be fraudulant in law must be
made concerning a material fact upon which the

NOVEMBER TERM, 1915. 53

Paxton-Eckman Chem. Co. v. Mundell—62 Ind. App. 45.

party to whom the representations are made has a right to, and does, rely to his injury. However, a party professing to have superior knowledge, who falsely represents a thing to exist and makes representations for the purpose of procuring an undue advantage over a person with whom he is contracting, and who is without such knowledge, is guilty of fraud. The complaint in the case at bar, among other things, alleges that appellant, through its servants, represented that it had made extensive research and had experimented upon diseased hogs and, by reason of such extensive research and experiment, had finally compounded a drug, the ingredient of which was to be found in the powders it desired to sell appellee, that would prevent hogs from contracting hog cholera; that the representations thus made were false and known to be so by appellant's servant, who made them, and were made for the purpose of inducing appellee to purchase the powders; that appellee would not have purchased the same had it not been for such fraudulent representations; that appellee was without knowledge of the merits of the powders, which fact appellant's servants well knew. These allegations go to existing facts. That appellant had by research and experiment compounded a drug that was found to prevent hog cholera was a material representation, and included a field in which, as the pleading disclosed, appellee was unskilled; and he did not have an equal opportunity with appellant to know the value and merits of the article sold.

Where a jeweler made false statements to an unskilled purchaser as to the merits of an article, which none but experts would be supposed to understand, Campbell, J., said: "Where a purchaser, without negligence, has been induced by the arts

of a cheating seller to rely upon the material statements which are knowingly false * * * it can make no difference in what respect he has been deceived, if the deceit was material and relied on." *Picard* v. *McCormick* (1862), 11 Mich. 68. In the case of *Conlan* v. *Roemer* (1889), 52 N. J. L. 53, persons skilled in sinking water wells agreed with the owner of the premises to sink a well to the rock and then into the rock to such a depth as to get a plentiful supply of water, they to receive $3.50 per foot therefor, and that in all probability this depth would not exceed twenty-five feet. They sank a shaft to the depth of 276 feet before finding the requisite supply of water. At the time of entering into the contract they knew by reason of their skill and experience that water could not be obtained at a depth of twenty-five feet. In this connection the court said: "So, if the plaintiffs, who were experts in their business, stated that water would probably be reached at the depth of twenty-five feet, when, in truth, their opinion, founded on actual previous experience, was, that it would be necessary to drill to the depth of more than two hundred feet, they asserted as a fact what they knew to be false."

The parties did not deal at arms length; the facilities for ascertaining the truth were not equal; the subject-matter of the negotiations and purchase was of such a nature and character that appellee being without information as to the merits thereof had a right to rely upon the representations made by appellant's servants, who professed to have the technical knowledge warranting the representations made. Appellee had a right to rely upon the same, which he did, to his injury. The complaint states a cause of action. *Huffstetter* v. *Buzett* (1869), 32 Ind. 293; *Coulter* v. *Clark* (1903), 160 Ind. 311, 66 N. E. 739; *Peffley* v. *Noland* (1881),

80 Ind. 164. The error assigned upon the action of the court in overruling appellant's motion for a new trial presents no question for consideration, for the reason that the motion for a new trial was not filed within the time prescribed by the statute. §587 Burns 1914, Acts 1913 p. 848. Judgment affirmed.

Note.—Reported in 112 N. E. 546. Buyer's risk, see 75 Am. St. 77.