## McCaskey Register Company *v.* Curfman.

[No. 6,552. Filed January 6, 1910. Rehearing denied February 4, 1910.]

1. SALES.— *Mutual Rescission.— Instructions.— Evidence.— Applicability.—Agency.*—An instruction on the theory of the mutual rescission of the sale of a cash register is not applicable to the evidence where the defendant testified that he executed an absolute written order for such machine, that the agent told him that such order would not take effect until he had given the machine

a trial and had accepted it, that he tried the machine, declined to accept it, and so told the agent who said: "Well, all right. You would better write to the company and tell them that you are going to ship it back." p. 303.

2. SALES.—*Contracts.*—*Principal and Agent.*—*Authority.*—*Burden of Proof.*—A merchant who executed an unqualified written order to an agent for a cash register knowing that such order would be sent to the company, assumes the burden of proving that such agent had authority to execute a collateral contradictory oral contract, binding upon the company, whereby the sale of such machine was optional upon such merchant's trial and acceptance thereof. pp. 303, 305.

3. EVIDENCE.— *Oral.*— *Varying Written Contract.*— *Fraud.*— *Mistake.*—Oral evidence is not admissible to vary a complete written contract, except upon a showing of fraud or mistake, but such evidence may be admitted to supply an omission from an incomplete contract. p. 304.

From Huntington Circuit Court; *Samuel E. Cook,* Judge.

Action by the McCaskey Register Company against Nelson J. Curfman. From a judgment for defendant, plaintiff appeals. *Reversed.*

*M. L. Spencer* and *W. A. Branyan,* for appellant.

*Bowers & Feightner,* for appellee.

MYERS, C. J.—Appellant sued appellee to recover the price of a certain account register sold conditionally by the former to the latter upon a contract in writing, dated May 19, 1905, signed by appellee and by one Buettel, appellant's salesman, on a printed form designated thereon "Agent's Contract," addressed to the appellant at Alliance, Ohio, directing the appellant to make and ship by freight, as soon as convenient, to the appellee at No. 123 Market street, Huntington, Indiana, a McCaskey Account Register, No. 200, in consideration of which the appellee agreed to pay to the appellant $55, "being the price of the register and the supplies herein ordered f. o. b. Alliance, Ohio." Payments were to be made in specified monthly instalments. Other provisions of the contract were:

"Five hundred pads in exchange for Keith, when shipped to factory. Should there be any. failure to pay

draft or other demand for cash payments, it is agreed that the full amount of the purchase price shall become due and payable. Should there be any default in the payment of any instalment, it is agreed that all the remaining instalments shall at once become due and payable. In default of any payment, you or your agent may take possession of and remove said register without legal process, and in such case all payments theretofore made by the undersigned under this order shall be deemed and considered as having been made for the use of said register during the time the same remained in the possession of the undersigned, and shall be retained and kept by said register company as such payment. It is agreed that the title to said register shall not pass until the purchase price or any judgment for the same is paid in full, and shall remain your property until that time. This contract covers all agreements (expressed or implied) between the parties hereto. It is expressly agreed that this order shall not be countermanded."

The cause originated before a justice of the peace, and the complaint was the only pleading. On trial by jury in the court below, a verdict was returned in favor of appellee. The overruling of appellant's motion for a new trial is assigned as error. In support of its motion it is insisted that the court erred in refusing to admit certain evidence offered by appellant, in admitting certain evidence over its objection, in refusing to give certain instructions tendered by appellant, and in giving to the jury certain instructions. Also that the verdict was not sustained by sufficient evidence and was contrary to law.

It was shown in evidence that the register was shipped to the appellee at Huntington on or about May 29, 1905, or ten days after the date of the order; that it was returned to appellant at Alliance about September 9, 1905, without the consent of the company; that it has been taken care of by the company since its return, and held subject to the order, direction and control of the appellee; that it was in good condition when it was sent out, was in good working condition when it was returned, and is still

in good condition; that no part of the purchase price, which is past due, has been paid; that Buettel, the sales-man who made the sale to appellee, quit the employ of appellant in November, 1905, and it is not known by any member of the company where he is or has been since that time; that appellee owned and carried on a grocery in one room and a meat shop in another room, both rooms con-nected by an arched opening; that he employed two men to assist him in the business; that he used another register; that appellant's agent, about May 19, 1905, having with him a sample register, went to appellee's place of business and endeavored to sell to him one of appellant's registers; that appellee testified that he told the agent he could leave his sample machine on trial; that the agent said he could not leave his sample, but he would send one from the fac-tory. Appellee testified, in part, as follows: "And so I said 'All right.' And so he got out this paper [referring to the order], and wanted me to sign it, and I told him, 'No, I would not sign it.' " He further testified that the agent said it was just a form that they used in business, and that if appellee would sign it he (the agent) would keep it in his hands until appellee was satisfied with the machine, and sent his old machine in as a partial payment, and made his first payment; that he was asked to make a payment and refused, saying he was not buying the ma-chine, but taking it on trial. He testified that the agent said "that if it did not prove the difference between my old machine and the new one—the difference that was to be paid—I did not need to keep the new machine. I should just box it up and send it back." Appellee further testi-fied that he used the new machine two or three weeks; that it was a complicated machine which he could not under-stand; that he did not know how to run it, and could not use it; that it was a machine "that you tore slips out of the back;" that it had a transfer paper that gave two slips at one writing, "and you would give the customer a..

slip and pull down a leaf and stick the other in your register, and then the leaves would go back up again, and you would just have a slip in there, and they were liable to get lost or anything; and so I did not like it on that account; and there was a set of books beneath, and I did not like it on that account.'' He testified that he boxed up the machine and set it in his back room, and it was there three or four days, when the agent came back, and appellee told him he had the machine boxed up ready for shipment, and the agent said: ''Well, all right. You would better write to the company and tell them that you are going to ship it back.'' Appellee wrote to the company, and did not receive an answer, and in August, 1905, shipped the machine back. Appellee further testified that the agent ''said that I should write to the company before I sent it back, which I did. * * * Of course he wanted me to keep it, and he tried to talk to me about it; but after he found out that I would not keep it he told me that I should write to the people and tell them.'' Appellee kept his old machine. It further appeared in the testimony of appellee that before the execution of the contract the agent explained to him the working of the sample register, and the appelle locked it over. The one sent was like the sample, except that it was larger. Appellee read over the contract before he signed it. It read: ''It is expressly agreed that this order shall not be countermanded.'' And he talked about that, and the agent told him it was not to be a contract unless he kept the machine. He talked with the agent about the whole contract, when he signed it and afterward. When asked on the trial why he did not insist on putting into said contract, before signing, that he was taking the machine on trial, he answered that he supposed the oral agreement was all right, and he had a witness there, who, however, did not sign, and who would have to depend on his memory as to what the contract was. Appellee testified that he sold his interest in the grocery, in a week or two

after he signed the contract, to Oscar Baker, who took possession. He sold the grocery a week or two after the register came. He testified that he intended to put the register in his meat market; that he had two accounts, and he intended to use the register in place of the old one; that he concluded he did not want it before he sold the grocery; that he had the machine boxed up before he went out of business; that he gave the register a good trial by using it, but he did not put all his accounts in it, because it was too much trouble; that the accounts he put in it were sales of both meats and groceries; that he charged the customers who dealt both in groceries and meats in one book; that he tried to get the man who bought him out to take the register, but he would not; that he tried to sell the register as a favor to the company, not as his own property; that he asked Baker if he wanted the machine, and he said, "No;" that he knew that Baker had to have another machine, and he (appellee) was going to keep his old one; that before he notified the company that he had sold out he asked Baker if he wanted to take the register and pay for it as he (appellee) would do if he should keep it; that he tried to get Baker to take it, as Baker had bought him out and he supposed he needed a machine; that he tried to sell it as the company's property as an accommodation, and because he did not want it; that he thought the company would want him to try to sell it—he knew he would.

The court excluded the testimony of the secretary and treasurer of appellant, offered in rebuttal; that the salesman, Buettel, was not authorized to cancel the order taken by him from appellee, and was not authorized to give appellee authority to return the register to the company; that no agent of appellant was authorized to allow appellee to return the register, nor to make any agreement about it, other than the written contract, which appellee signed. The testimony relating to the conversations between appellee

and the agent of appellant, tending to show an agreement between them inconsistent with the terms of the written order, was admitted over numerous objections of appellant, and the court in its instructions indicated to the jury that such oral agreement was binding upon appellant.

The court in an instruction told the jury that a party may sell property to another, and the parties may afterward mutually agree to rescind said contract; that is, that the seller is to take back the property from the purchaser, and that in such cases if the parties mutually agree that the contract of sale is rescinded, then the seller cannot afterward collect the purchase price for the property from said purchaser.

Of this instruction it is to be observed that it was not relevant to the evidence. In the conversation between appellee and the salesman, after the sale, there was no agreement for rescission. The agent merely referred appellee to the company, and there was no other evidence of the consent of appellant.

In its rulings admitting evidence of the oral agreement with the agent, and in its instructions concerning such agreement, the court departed from well-settled law. The agent was not shown to have authority to make any contract other than that expressed in the written order accepted and acted upon by appellant, and appellee had no sufficient reason to suppose that. he would receive or did receive the register except upon the transmission of the order to appellant and the acceptance by appellant of its terms. In the case of *Singer Mfg. Co.* v. *Sults* (1897), 17 Ind. App. 639, there was a written contract between plaintiff and defendant for the conditional sale of a sewing machine. It does not appear that there was an agent in the transaction. Defendant was permitted to testify that, before the written contract was entered into, it was agreed between plaintiff and defendant that if the absent husband

should be dissatisfied with the purchase, and would not approve it, plaintiff would return an old machine, taken in part payment, and the money delivered by defendant to plaintiff, and would take away the machine so sold to defendant. It was held that the admission of such evidence was erroneous; that when a written contract is complete it cannot be explained, modified or changed by inserting any conditions by parol, and, further, that fraud could not be predicated upon such an oral promise to be performed in the future. There is nothing in the contract in suit indicating that it was not complete in itself, or that it was collateral to some other contract not stated therein, as in the case of a bond stating no consideration, and showing by implication that it is collateral to some other agreement not stated. See *Singer Mfg. Co.* v. *Forsyth* (1886), 108 Ind. 334.

While in certain cases collateral oral matter may be admitted if necessary to complete the contract, it cannot be shown if it contradicts, adds to or takes from a complete written contract. *Buckeye Mfg. Co.* v. *Woolley, etc., Works* (1900), 26 Ind. App. 7; *Cole* v. *Gray* (1894), 139 Ind. 396, 407. Courts will not relax the general rule except on the ground of fraud or mistake. *Brunson* v. *Henry* (1894), 140 Ind. 455, 462. When a contract is reduced to writing, the legal presumption is that the entire contract, as finally settled, is embraced therein, and all oral negotiations or stipulations between the parties, which preceded or accompanied the execution thereof, are to be regarded as merged into it, and it is to be treated as the exclusive medium of ascertaining the contract by which the parties are bound. *Cincinnati, etc., R. Co.* v. *Pearce* (1867), 28 Ind. 502, 506; *Reynolds* v. *Louisville, etc., R. Co.* (1896), 143 Ind. 579, 614; *Hostetter* v. *Auman* (1889), 119 Ind. 7; *Western Pav., etc., Co.* v. *Citizens St. R. Co.* (1891), 128 Ind. 525, 536, 10 L. R. A. 770, 25 Am. St. 462; *Diven* v. *Johnson* (1889), 117 Ind. 512, 3 L. R. A.

308; *Conant* v. *National State Bank* (1889), 121 Ind. 323; *Gemmer* v. *Hunter* (1905), 35 Ind. App. 501.

There does not appear to be any pretense that the register was in any way defective, or that it did not correspond fully with the sample examined by appellee. There was no evidence that the agent had any authority to do anything but to secure a written contract, acceptable to appellant, and transmit it to appellant. The agent was authorized, so far as appears, to solicit orders in writing only, upon a prescribed form. He and those dealing with him were bound by the restrictions necessarily implied from the act thus to be performed by him. If he exceeded his authority. and went beyond the apparent power given him by appellant, and his action was not ratified by the company, his action, so far as it exceeded his authority, actual and apparent, was not binding upon the company. "The distinction between special and general agents is of little or no practical value, so far, at least, as regards the principal and third persons. Whenever a dispute arises between them with reference to the authority of the agent, the question is not simply whether the authority is special or general. but it may also be very necessary to inquire, as will appear hereafter, whether the agent's acts are within the apparent scope of his authority." Ewell's Evans, Agency, *2. Again. the same author (*140) says, that in the case of a question between the principal and a third person who has dealt *bona fide* with the agent, "the true limit of the agent's power to bind the principal will be the apparent authority with which the agent is invested." In the case of *Robinson & Co.* v. *Nipp* (1898), 20 Ind. App. 156, it is said: "The authority of an agent must proceed from his principal. In ascertaining the extent of his authority we must look to what has been expressly or impliedly authorized before the act of the agent in question, or to the conduct of the principal after the act in relation

thereto, by way of adopting or rejecting it.  *  *  *  It is true that the liability of the principal for the conduct of the agent is not to be determined alone by the authority actually given to the agent, but the principal will be bound as if he had conferred the authority which the third person dealing with the agent was justified in believing to have been given to the agent; but the third person is thus justified not by the words or acts alone of the agent, but by the words or conduct of the principal. There must be an appearance of authority caused by the principal, and the agent must have acted within its scope.''

In the case at bar appellant kept the means of protecting itself and also its customers from unauthorized acts of the agent, by reserving to itself the acceptance and adoption of a written contract transmitted to the principal in the form of an order. If the printed form contained too much or too little to satisfy the purchaser dealing with the agent, such purchaser was bound to eliminate or insert, or both, so as to show what proposal he desired the principal to accept. Such restriction upon the power of the agent was necessarily implied by the act to be done by him.

Appellee contends that the order in question was delivered to appellant's agent pursuant to an oral agreement previously made between him and the agent, to the effect that the written order should not become operative as a contract until he (appellee) had received the register, given it a trial, and was satisfied with it, and that proof of such oral agreement did not tend to contradict the contract in suit. As between the parties, want of delivery of an instrument, or that it was delivered upon a condition to be complied with before the instrument shall become effective as a contract, may be shown, although the condition may rest in parol. *Burke* v. *Dulaney* (1894), 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698. But this rule is not applicable to the case at bar. Here appellee was dealing with an agent whose authority, as we have seen, was circumscribed

by the order, which appellee read and signed, directed to the company as a proposition for its acceptance. Appellee knew that the register was to come from the company and not from the party with whom the parol agreement, sought to be proved, was made. Throughout the trial the cause was controlled by an erroneous theory.

Judgment reversed, and cause remanded for a new trial.