## SIMON v. SHAFFER.

[No. 12,343. Filed May 20, 1926.]

MASTER AND SERVANT.—*Farm hand cutting branches of fallen tree assumed the risk of the body rolling upon him*—A farm hand, with some experience in cutting fallen trees into wood, who undertook to convert into wood the branches and body of a tree that had fallen over an embankment and was held in place by certain branches resting on the ground, assumed the risk of cutting said supporting limbs, and could not recover from his employer for injuries received by the body of the tree rolling upon him after its supporting limbs were cut away, as he was bound to know that this might happen.

From Johnson Circuit Court; *Fremont Miller*, Judge.

Action by Ernest C. Shaffer against Edward L. Simon. From a judgment for plaintiff, the defendant appeals. *Reversed.* By the court in banc.

*Ivory Drybread* and *William Featherngill*, for appellant.

*George I. White* and *Fred R. Owens*, for appellee.

THOMPSON, J.—This is an action for damages for personal injuries alleged to have been sustained by ap-

pellee, because of the alleged negligence of appellant, while appellee was in appellant's employ.

Appellee's complaint alleged, in substance: That appellant owned and operated a large farm in Johnson county; that prior to January 6, 1921, appellee was employed by appellant to do general farm work on said farm, cultivating, harvesting, storing and marketing the crops thereon, and caring for livestock, and other such usual farm duties; that on January 6, 1921, appellant directed appellee to cut and saw into firewood certain down timber lying along a certain stream on said farm; that appellee was not experienced in the cutting or sawing of such timber, and was not employed generally for such purpose, and that such service was not within the ordinary scope of his employment; that appellee undertook such work and, at the direction of appellant, proceeded to cut into firewood a certain particular tree which had fallen and lay overhanging an embankment along said stream; that said tree was lying in a position horizontal to said embankment and was held in place by certain of its branches resting on the ground; that the ground was frozen and covered with ice and snow, and that appellee had had no experience in cutting and sawing trees in such position, and did not know that such work under such circumstances was dangerous; that appellant had been a farmer all his mature life and knew that the cutting up of such particular tree was dangerous and that if its supporting branches were cut, it was liable to roll down said embankment; that appellant failed to warn appellee of such danger; that appellee, without realizing the danger, proceeded to cut off the projecting and supporting branches of said tree in order to reach the body of the tree, and while so doing, the tree suddenly rolled down said embankment and upon said appellee; that appellee's right ankle and foot were broken and badly mangled and that he re-

ceived various other cuts and bruises; that appellee, because of such injuries, was confined to his bed for many months, and for about two years after he was able to be out of bed, it was necessary for him to use a crutch or cane while walking; that he was unable to work for a period of two years, and that his right ankle has never been restored to its normal power and function and will be permanently stiff, and that he is permanently disabled; that appellee was put to great expense in caring for his injuries and procuring medical attention in the sum of $1,000; that all of said injuries were due wholly to the fault and negligence of appellant in failing to furnish appellee a safe place to work, and in not informing him of the danger of said tree rolling and turning as it did; that appellee had no knowledge of said danger, and no previous experience from which he could have anticipated such event; that appellee, by reason of his injuries, loss of earning power, mental and physical pain and suffering, and his expenses incurred in attempting to cure himself, has been damaged in the sum of $10,000, and for costs and all proper relief.

Appellant filed a motion to require appellee to make his complaint more specific, which motion was overruled and appellant excepted. Appellant then filed a demurrer to the complaint. This demurrer was overruled and appellant excepted and filed answer in general denial. There was a trial by jury. At the conclusion of all the evidence, appellant moved the court to direct the jury to return a verdict for appellant. The motion was overruled and appellant excepted. Appellant submitted fifty-eight interrogatories to be answered by the jury, of which nine were refused by the court and the jury returned answers to forty-nine. A general verdict was returned by the jury in favor of appellee for $8,500 and costs, and judgment was rendered against

appellant for said amount. Appellant moved the court for judgment on the answers to the interrogatories given by the jury, for the reason that said answers were in conflict with the verdict. The motion was overruled and appellant excepted. Appellant then filed a motion for a new trial.

The errors relied on are: (1) The trial court erred in overruling appellant's motion to require appellee to make his complaint more specific; (2) the court erred in overruling the second, third, fourth and fifth specifications of appellant's motion to require appellee to make his complaint more specific; (3) the court erred in overruling appellant's demurrer to appellee's complaint; (4) the court erred in overruling appellant's motion for judgment on the answers to interrogatories; (5) the court erred in overruling appellant's motion for a new trial.

The undisputed evidence shows that appellee was employed by appellant in October, 1921, and worked on the farm until his injury; that appellant was to pay appellee nine dollars per week, furnish him a house in which to live, a garden, one cow and 400 pounds of meat per year, also fuel, either coal or dead and down timber, from which appellee was to make wood for himself; that appellee was an able-bodied man twenty-seven years old and intelligent; that he was born in Brown county, Indiana, and lived on a farm with his parents until he was about eighteen years of age except for two or three summers he worked on a farm in Johnson county; that he had had some experience in cutting wood; that on the day he was injured, he was accompanied by one Smith who was also employed on the farm by appellant and had been down to the southern part of the farm getting wood; that appellee and Smith were called to the house, and when they started to return to get wood, appellee mentioned to appellant that

the tree on the bank of the creek was nearer and that it was getting late in the day, whereupon appellant told them that it would be all right for them to get wood there and that, if there was timber that would do for a saw-log, to save that and cut the rest of the tree into wood.  Appellee and Smith, who was working with him, both testified that they saw no evidence of any danger while they were working on the tree, and that there was nothing regarding the situation as they saw it to cause them to believe or apprehend that said tree would slide down over the embankment.  Both of these parties had seen the tree prior to the day of the accident and had passed by or near it.  The evidence further shows that appellee and his assistant commenced at or near the top of the tree and began cutting off the branches and working the trunk into wood, and after most of the branches had been cut away, appellee was standing seven or eight feet east of the bank of the creek and on the south side of the body of the tree, chopping on a limb which extended south from the tree, and when so situated, the tree slid down over the embankment and drew appellee with it, thus causing his severe injuries; that appellee's ankle was broken and lacerated and he was so badly injured that he will never fully recover, and that he was prevented from performing any labor for more than two years.

Among the numerous interrogatories submitted to and answered by the jury were the following:  "(18) Was plaintiff employed by the defendant to work on his farm, as a farm hand, about October 27, 1920? Ans:  Yes.  (19) Had plaintiff ever worked on a farm as a farm hand prior to October 27, 1920?  Ans:  Yes. (20) If you answer the foregoing question 'yes,' for about how long had plaintiff worked on a farm before he was employed by defendant?  Ans:  About 10 or 11 years.  (21) Had plaintiff ever sawed or cut any fire

wood prior to October 27, 1920? Ans: Yes. (22) Was it a part of plaintiff's contract of employment with defendant that said defendant should furnish plaintiff dead or down timber for fire wood? Ans: Yes. (23) If you answer the foregoing interrogatory 'yes,' was it a part of plaintiff's said contract of employment with defendant that plaintiff should cut his own fire wood from such dead or down timber? Ans: Yes."

In the case of Rase v. Minneapolis, etc., R. Co. (1909), 107 Minn. 260, 120 N. W. 360, 21 L. R. A. (N. S.) 138, in speaking of the difference between assumption of risk and contributory negligence, it is said: "Assumption of risk is a matter of contract, express or implied, while contributory negligence is a matter of conduct." Davis Coal Co. v. Polland (1902), 158 Ind. 607, 62 N. E. 492, 92 Am. St. 319.

In Narramore v. Cleveland, etc., R. Co. (1899), 96 Fed. 298, 48 L. R. A. 68, the court said: "Assumption of risk is in such cases the acquiescence of an ordinarily prudent man in a known danger, the risk of which he assumes by contract. Contributory negligence in such cases is that action or nonaction in disregard of personal safety by one who, treating the known danger as a condition, acts with respect to it without due care of its consequences. * * *

"Assumption of risk and contributory negligence approximate where the danger is so obvious and imminent that no ordinary prudent man would assume the risk of injury therefrom. But where the danger, though present and appreciated, is one of which many men are in the habit of assuming * * * for extra compensation, one who assumes the risk cannot be said to be guilty of contributory negligence if, having in view the risk of danger assumed, he uses care reasonably commensurate with the risk to avoid injurious consequences. One who does not use such care, and who, by

reason thereof, suffers injury, is guilty of contributory negligence, and cannot recover, because he, and not the master, causes the injury, or because they jointly cause it."

In discussing the assumption of risk, in *Riley* v. *Neptune* (1913), 181 Ind. 228, 103 N. E. 406, the court said: "All servants, therefore, are presumed to be acquainted to some extent with the properties of matter and the operation of the laws to which it is subject. To this generic conception are referable the decisions which proceed upon the hypothesis that a servant is, in some degree at least, bound to take notice of the dangers arising from the action of gravitation under various circumstances. * * * In such case it is said that the inability to maintain the action is a peremptory conclusion of law, if it is apparent that the injury resulted from a risk of this description, unless it is shown by the plaintiff that by reason of his immaturity of years, experience, or other disability, he was incapable of appreciating the danger and therefore, that he was not chargeable with that comprehension of the risk which otherwise he would be presumed to have possessed. And from the standpoint of the master's duty of ordinary care to provide a safe place, it is the rule in such case that he is under no obligation to provide against the ordinary risks incident to the performance of the contract of service. 'The rule that it is the duty of the master to exercise ordinary care to provide a reasonably safe place of work for his servants is held not to be applicable to cases in which the very work which servants are employed to do is of such a nature that its progress is constantly changing the conditions as regards an increase or diminution of safety. The hazards thus arising as the work proceeds are regarded as being the ordinary dangers of the employment, and

by his acceptance of the employment the servant necessarily assumes them.'"

In the case of *W. B. Conkey Co.* v. *Larsen* (1910), 173 Ind. 585, 91 N. E. 163, 29 L. R. A. (N. S.) 116, the court said: "It is elementary that the old law requires the master to furnish his servant with a working place and appliances that are reasonably safe, and to keep them so, except as to such dangers as are open, ordinary and common to such place or instrumentality, which the servant is held to know and assume under his contract of employment, and except further such new dangers as arise and are voluntarily encountered by the servant after knowledge and comprehension of the same. The master is only liable for the neglect, or omission, of some duty owing to the injured person. In other words, to render the master liable it must be shown that the injury complained of was the direct result of some fault of the master." See, also, 3 Labatt, Master and Servant (2d ed.) §1177; *Town of Crown Point* v. *Thompson* (1902), 31 Ind. App. 195, 65 N. E. 13.

In no view of this case, under the evidence, could appellant be held liable. There was a tree lying in a place and position which was obvious to everyone, and the appellee was bound to know that if he cut the limbs which held the body of the tree above the ground, as alleged in the complaint, the tree was liable to fall or turn in obedience to the law of gravitation. Appellee saw the tree and the surroundings, and was bound to take notice of the fact that if the supporting limbs were cut, the tree might roll or slide down the bank.

The judgment is reversed.