VERNON FIRE AND CASUALTY INSURANCE COMPANY
*v.* CHARLES E. THATCHER ET UX.

[No. 371A51. Filed August 3, 1972. Rehearing denied October 4, 1972.
Transfer denied without majority opinion February 7, 1973,
but with concurring opinion at 260 Ind. 55.]

*Hickam & Hickam,* of Spencer, for appellant.

*Vernon J. Petri,* of Spencer, for appellees.

WHITE, J.—Appellees, Mr. and Mrs. Thatcher (Thatchers), suffered a fire loss, a part of which was not covered by the insurance policy they had purchased from appellant (Company) through an agent (Schepper). They recovered a verdict and judgment against the company in the sum of $7,500.00 on a complaint which alleged that the agent had falsely represented to them that the policy would cover such a loss.[1] We today affirm that judgment.

The appellant Company has saved and argued some nineteen specifications of error. The issues those contentions of error present to us may be summarized as follows:

A. *Election.* Whether by affirming a contract a party thereto gives up his right to claim damages for misrepresentations as to its provisions.

B. *The parol evidence rule.* Whether the parol evidence rule applies procedurally in the trial of such a claim to exclude evidence of the allegedly false representations and/or substantively to preclude liability therefor and to confine the rights and liabilities of the parties to the provisions of the contract.

C. *Scienter.* Whether evil intent and knowledge of falsity are essential to the liability of one who makes false representations or whether recklessness is sufficient.

---

1. The complaint (actually a third amended complaint) was in four counts (paragraphs). Paragraph I is not involved in this appeal since it was made a separate action in which Thatchers recovered judgment (which the Company paid) for a loss which was covered by the policy. Paragraph II (which sought a judgment against agent Schepper) was voluntarily dismissed by Thatchers. The verdict on which judgment was rendered found "for the Plaintiffs . . . [Thatchers], and against the Defendant, . . . [Company] upon Paragraph Four of Plaintiffs' Third Amended Complaint and assess plaintiff damages in the sum of $7500.00." A similar verdict was rendered as to Paragraph Three (which alleged agent Schepper negligently acquired for them the wrong policy), but it assessed damages "in the sum of $ -0-". *No* judgment was rendered on that verdict. The judgment here on appeal, then, involves only Paragraph Four which alleges that the Company's agents represented that the policy did cover the property later lost by fire when they "well knew or should have known that . . . [it] did not . . . but knew or should have known that such misrepresentations were misstatements . . . and were false."

D.   *Agency, scope of authority and vicarious liability.*
Whether evidence that one claiming to be an insurance com-
pany's agent solicited and obtained an order for a policy
which he later delivered (being admittedly sufficient to war-
rant an inference of agency to solicit) is sufficient to imply
that the agent is authorized by the company to represent to
the solicitee, for the purpose of inducing an order, the provi-
sions of the policy coverage and whether the company is liable
for a reckless or intentional misrepresentation.

E.   *Measure of Damages.* Whether the damages awarded
are excessive in view of the company's limit of liability under
the coverage allegedly misrepresented.

This lawsuit has its remote origin in the fact that Thatchers
were simultaneously engaged in two separately located busi-
ness enterprises. They owned and operated a farm in Owen
County and also operated the saddle barn concession in McCor-
mick's Creek State Park, some fifteen miles from their farm
home. The Saddle Barn burned on October 17, 1966, destroy-
ing personal property of the Thatchers located in the barn.
At that time they held a farmowners policy issued by defend-
ant and which had been sold to them by the agent Schepper.
Among the categories of property insured by the policy was
"unscheduled personal property" both on the farm premises
and away from the farm. As to coverage away from the
premises, however, the policy contained this exclusionary pro-
vision: "Property pertaining to a business is not covered."
Some of Thatchers' personal property destroyed in the fire did
*not* pertain to business and is *not* directly involved in this
lawsuit.[2] What is involved is the loss in that fire of approxi-
mately $7,500.00 worth of personal property used by the
Thatchers in the business of operating the Saddle Barn. That
property was not covered by the policy, but as stated in the
Company's brief, "[t]he evidence is replete with testimony . . .

2.   Recovery for that loss was the subject of Paragraph I of the
(third amended) complaint which was tried separately. See Note 1, *ante.*

that in soliciting the Farmowner's Policy and in taking Thatcher's application before delivery of the policy Schepper, on numerous occasions, represented to Thatcher that all his property at the saddle barn would be covered by the policy. . . ." Also, "testimony . . . that Schepper and Fiscus, Vernon's field representative, about March 1, 1964, at Thatcher's home almost a year after the policy was delivered, again represented to Thatcher that his property in question at the saddle barn would be covered by the policy. . . ." On the latter date there was a discussion of Workmen's Compensation and Public Liability policies which had previously been in another company through another agent but were thereafter issued by appellant Company. There is also evidence, which is undisputed, that a small loss was paid (prior to the fire) for damage to a horse drawn vehicle used in the Saddle Barn business.

The pleadings on which this case was tried were filed in 1969 under the so-called code pleading rules.[3] Those pleadings are Paragraphs III and IV of the third amended complaint (hereafter merely "complaint") and the Company's answers thereto. The answers are merely admissions and denials, no affirmative defense having been pleaded. We find the material allegations of the complaint to be accurately summarized in the Court's Instruction No. 1 which told the jury that the plaintiffs had the burden of proving, as to Paragraph III:

"First: That the Defendant, Vernon Fire and Casualty Insurance Company, at the time of the fire in question was negligent in:

"A. That Defendant knew or should have known through the exercise of reasonable care that the insurance

---

3. Nearly ten months before the trial commenced (on September 23, 1970), the new Indiana Rules of Procedure became effective. Four days before the trial (at the same time that defendant's motion for summary judgment was stricken, see n. 5, p. 698 post) the court approved a comprehensive pre-trial order prepared by the parties pursuant to order of the court made some three weeks earlier at a pre-trial conference, all pursuant to TR. 16. The issues and theories of the parties therein stated do not differ in any material respect from those revealed by the pleadings. Perhaps it is for that reason that the briefs of neither party mention the pre-trial order.

policy issued by the Defendant to Plaintiffs did not cover loss to Plaintiffs' personal property when kept away from the 'premises' on which said policy was written and used in plaintiffs' business, or

"B. That Defendant advised plaintiffs that defendant had, pursuant to the request of Plaintiffs, chosen a policy of insurance which covered loss by fire of plaintiffs' personal property located at said Saddle Barn when in fact such policy did not cover such property so located.

"Second: That the agent or employee of the Defendant acted within the scope of their authority, real or apparent, and that plaintiffs had no knowledge to the contrary.

"Third: That Plaintiffs sustained damage as claimed.

"Fourth: The aforesaid negligence was the proximate cause of such Plaintiffs' damages."

As to Paragraph IV, the same instruction stated plaintiffs had the burden of proving:

"First: That the defendant, Vernon Fire and Casualty Insurance Company, at the time of the fire in question through its agent or employee falsely represented to the plaintiffs that plaintiffs' personal property in the Saddle Barn was insured against loss by fire by the policy issued by defendant when in fact said policy as issued did not cover plaintiffs' personal property in the Saddle Barn.

"Second: That the Agent of the defendant acted within the scope of their authority, real or apparent, in making such false representation knowing such representation to be false or recklessly made such representation without knowledge of its truth or falsity and that such representation was made for the purpose of inducing plaintiffs to act upon it and that plaintiffs had no knowledge to the contrary and relied and acted upon such representation of the defendant.

"Third: That plaintiffs sustained damages as claimed."

Each paragraph contained a list of the personal property lost in the fire and not covered by the policy. The total listed value thereof is $7,402.22, which is alleged to be the amount of Thatchers' damage.

Since this appeal is from a judgment based solely on Paragraph IV of the complaint[4] we are now concerned with Para-

4. As noted *ante*, p. 694, n. 1, the jury returned separate verdicts as to each Paragraph of complaint finding for plaintiffs and against de-

graph III only to the possible extent that its allegations ·or theory may affect the admissibility of evidence or the propriety of any jury instruction.

The parties appear to agree that Paragraph III is a negligence action while Paragraph IV is a fraud action. Neither paragraph seeks relief by virtue of the policy. Neither makes any claim that the policy covers more than its printed word states it covers. Both paragraphs concede that the policy does not cover the property listed as lost in the fire. But both assert, however, that plaintiffs have been damaged to the extent of the value of that property by reason of the defendant's negligence and/or misrepresentation.

## A.  Election.

The defendant-company first raised this issue in its motion ·for summary judgment.[5] It was also raised at subsequent

fendant on each, assessing damages on Paragraph III "in the sum of $-0-," and on Paragraph IV "in the sum of $7500.00." Plaintiffs moved immediately for judgment on the verdict on Paragraph IV (making no mention of the other verdict). Defendant objected "for the reason that the verdict [$7500.00] is in excess of the amount prayed for [$7,402.22] . . . in . . . said fourth paragraph. . . ." The following day the court overruled defendant's objection and entered

"judgment for the plaintiffs and against the defendant on the verdict of the jury on Paragraph IV of plaintiffs' third amended complaint in the sum of $7,500.00 together with costs of this action.
"It is therefore now considered ordered, adjudged and decreed by the court that plaintiffs recover from the defendant upon the fourth paragraph of plaintiffs' third amended complaint the sum of $7,500.00 together with the costs of this action JUDGMENT."

No one has suggested the possibility that the judgment may not be final (hence not appealable) in that it "adjudicates fewer than all the claims." TR. 54(B).

5. One error urged in this appeal is the striking of that motion from the files on plaintiffs' motion. As we said in *Swain* v. *City of Princeton* (1970), 147 Ind. App. 174, 190, n. 14, 259 N. E. 2d 440, 449, n. 14, 21 Ind. Dec. 622, 637, n. 14: "While a motion to strike a motion has been held to be irregular or improper procedure, it has also been held that the sustaining of such a motion 'is equivalent merely to overruling the first motion.'" Our opinion here, by resolving against the appellant all issues raised by the motion for summary judgment demonstrates that if there was any procedural impropriety in striking it from the files instead of ruling on its merits, the error was harmless. See *East* v. *Carr* (1936), 210 Ind. 542, 544, 1 N. E. 2d 1004.

stages and has been preserved in the motion to correct errors. The Company contends that by suing on the policy for the value of the nonbusiness property lost in the fire at the Saddle Barn, by recovering judgment therefor, and by thereafter accepting payment of that judgment, plaintiffs have ratified the policy as written and may not now repudiate it and recover damages. In support of that contention the Company relies on language in *Doherty* v. *Bell* (1876), 55 Ind. 205, 208, and *St. John* v. *Hendrickson* (1882), 81 Ind. 350, 352. Applied to the facts in those cases, the principles there stated produced just results. Only by misinterpretation of that easily misunderstood language do those cases furnish any basis for contending that plaintiffs' suit on the policy has released defendant from liability for the alleged misrepresentation of the policy's coverage.

In *Johnson* v. *Culver* (1888), 116 Ind. 278, 285, 19 N. E. 129, 133, the Supreme Court said:

> "The retention of property by a party who has suffered loss from the fraud of another does not preclude the loser from maintaining an action for damages, nor does even an express waiver of the fraud and explicit ratification of the contract have the effect to deprive the party of his action, *unless, indeed, the ratification is of such a character as to imply a release from the consequences of the fraud.* [Emphasis added.]"

The principle applicable here is that a "ratification" implies a release from the consequences of the fraud *only* if the ratification is inconsistent with a claim for damages caused by the fraud. *Union Central Life Insurance Co.* v. *Schidler* (1891), 130 Ind. 214, 216, 29 N. E. 1071, 1072, holds

> "that an action on the contract and one predicated on the fraud are not inconsistent, and that both may be prosecuted concurrently, and recovery in the one will not bar a recovery in the other."

The only election plaintiffs made by affirming the policy contract and suing for what they claimed was their due under

its terms was the election not to rescind the policy and not to claim return of the premium they had paid for it. *Sickels* v. *Aetna Securities Co.* (1942), 220 Ind. 347, 351, 41 N. E. 2d 947, 948; *Automobile Underwriters, Inc.* v. *Rich* (1944), 222 Ind. 384, 389, 53 N. E. 2d 775, 777; *Church* v. *Baumgardner* (1910), 46 Ind. App. 570, 571, 92 N. E. 7.

### B.   *The parol evidence rule.*

Succinctly stated, the parol evidence rule provides that "the terms and conditions [of a valid written contract] may not be varied or changed by parol or extrinsic evidence coming *de hors* the instrument." *Lewis* v. *Burke* (1967), 248 Ind. 297, 305, 226 N. E. 2d 332, 337. The rule, however, operates to exclude extrinsic evidence only when offered for the purpose of, and with the possible effect of, altering, modifying, or changing the terms, provisions, conditions, or meaning of the written instrument. Thus, "in a suit to procure . . . rescission [for false representations] parol evidence of such prior and contemporaneous representations is admissible." *Gatling* v. *Newell* (1857), 9 Ind. 572, 576.

Here the suit is not to procure rescission, of course, but as already noted, to procure the alternative remedy of damages because the contract is not what it was represented to be. The purpose is not to change the terms of the contract as written. It has been affirmed as written. The purpose of the extrinsic parol evidence here is to prove that it was *represented* to be something else. Not that it *is* something else. For that purpose the evidence was admissible.

The parol evidence rule is more than an exclusionary rule. It is also a rule of substantive law. When applied substantively its effect vis-a-vis the parties to a contract, and with respect to the subject matter thereof, is that neither has any rights or duties which are not set

forth in the contract. That result is achieved by assuming as a matter of law that all prior and contemporaneous negotiations, understandings, and agreements have been merged in the written contract. Or, as most recently stated by the Supreme Court of Indiana, "The parol evidence rule states that an agreement or contract, signed by the parties, is *conclusively presumed* to represent an integration or meeting of the minds of the parties." (Original emphasis.) *Weaver* v. *American Oil Company* (1971), 257 Ind. 458, 276 N. E. 2d 144, 147, 28 Ind. Dec. 83, 88.[6] Much of the Company's argument at bar urges, impliedly or expressly, that Thatchers' rights against it are limited to the provisions of the policy as written.

But the parol evidence rule has never operated to merge or integrate actionable misrepresentation. In 1856 our Supreme Court cited a lone out-of-state authority in support of the proposition that:

> "Where the warranty is not contained in the written contract, it cannot be proved by parol evidence, unless, in addition to the averment that there was such warranty, there be an allegation that it was false or fraudulent, and that thereby the vendee was deceived. And in such case, parol proof is only evidence of a representation. *Salem India Rubber Co.* v. *Adams* [ (1839), 40 Mass. 256], 23 Pick. 256." *McClure* v. *Jeffrey* (1856), 8 Ind. 79, 83.

---

6. Not material here, yet not without significance to the company's reliance on the parol evidence rule to insulate it from liability, is the court's comment which follows the above quoted statement:

"This is an archaic rule from the old common law. The objectivity of the rule has as its only merit its simplicity of application which is far outweighed by its failure in many cases to represent the actual agreement, particularly where a printed form prepared by one party contains hidden clauses unknown to the other party is submitted and signed. The law should seek the truth or the subjective understanding of the parties in this more enlightened age. The burden should be on the party submitting such 'a package' in printed form to show that the other party had knowledge of any unusual or unconscionable terms contained therein. The principle should be the same as that applicable to implied warranties, namely that a package of goods sold to a purchaser is fit for the purposes intended and contains no harmful materials other than that represented. Caveat lessee is no more the current law than caveat emptor. Only in this way can justice be served and the true meaning of freedom of contract preserved. The analogy is rational."

The problem of misrepresentation in the sale of land had, however, been dealt with in Indiana a decade earlier in *Cowger* v. *Gordon* (1835), 4 Blkf. 110, but in terms only of *caveat emptor,* without mention of the parol evidence rule. There it was held:

> "When the vendor undertakes to point out and show the particular premises, the lines, the improvements, &c., to the vendee, the law implies a warranty that he is pointing out and showing the true and identical premises, lines, improvements, &c., that he is selling; and if he makes a mistake he must be accountable."

In *Campbell* v. *Frankem* (1879), 65 Ind. 591, 595, that holding was extended by saying that "the vendee had a right to rely upon such representations, without further examination of the surveys or records." But, again, there was no mention of the parol evidence rule.

When, however, the Indiana Appellate Court decided *Equitable Trust Co.* v. *Milligan* (1903), 31 Ind. App. 20, 24, 65 N. E. 1044, 1046, there was no dearth of Indiana authority that the parol evidence rule did not apply. Said the court:

> "Appellant contends that *Cowger* v. *Gordon, supra,* and *Campbell* v. *Frankem, supra,* were incorrectly decided. The cases have not been overruled and are therefore followed. The criticism made of them is that the contract between the parties having been reduced to writing, previous oral negotiations are merged therein, and that the terms of the agreement can not be made to appear otherwise than by reference to the writing. The general proposition is well settled, but it does not prevent proof of collateral independent parol agreements between the parties prior to or contemporaneous with the time of the writing, *while fraud and mistake may always be shown.* The doctrine of merger in nowise applies to them. *Allen* v. *Lee,* 1 Ind. 58, 48 Am. Dec. 352; *Page* v. *Lashley,* 15 Ind. 152; *Carver* v. *Louthain,* 38 Ind. 530; *Maris* v. *Iles,* 3 Ind. App. 579; *Tyler* v. *Anderson,* 106 Ind. 185." (Our emphasis.)

By 1949, when *Clarke Auto Co.* v. *Reynolds* (1949), 119 Ind. App. 586, 591, 88 N. E. 2d 775, 777, was decided there was

an abundance of native authority available to document the following comprehensive statement of the rule and the exceptions to it:[7]

"When a contract is reduced to writing, all oral negotiations between the parties which preceded or accompanied the execution thereof, in the absence of fraud or mistake, are regarded as merged in it, and it will be treated as the exclusive medium of ascertaining the contract between the parties. The general rule is that oral matters may not be shown if they contradict, add to or take from a written contract. *McCaskey Register Co.* v. *Curfman* (1910), 45 Ind. App. 297, 90 N. E. 323; *Diddel* v. *American Security Co.* (1932), 94 Ind. App. 639, 161 N. E. 689. Therefore, in the absence of fraud or mistake an express warranty cannot be shown by parole evidence, where the written contract is complete in all its parts. *King* v. *Edward Thompson Co.* (1914), 56 Ind. App. 274, 104 N. E. 106; *Michigan Pipe Co.* v. *Sullivan County Water Co.* (1920), 190 Ind. 14, 127 N. E. 768, 129 N. E. 5; *Conant et al.* v. *The National State Bank of Terre Haute et al.* (1889), 121 Ind. 323, 22 N. E. 250.

"Where there is a charge that the written contract was procured by fraud, then such conversations as to extrinsic warranties and representations may be heard for the purpose of determining whether there was such fraud as invalidates the contract of sale or constitutes a cause of action for damages. *Paxton-Eckman Chem. Co.* v. *Mundell* (1916), 62 Ind. App. 45, 112 N. E. 546; *Tribune Co.* v. *Red Ball Transit Co.* (1926), 84 Ind. App. 666, 151 N. E. 338, 151 N. E. 836; *Citizens National Bank v. Kerney* (1915), 59 Ind. App. 96, 108 N. E. 139; *Marker* v. *Outcault Advertising Co.* (1919), 69 Ind. App. 344, 122 N. E. 32; 7 Blashfield, *Cyc. of Automobile Law and Practice,* § 4240."

Also found in appellant-Company's contentions with respect to the substantive effect of the parol evidence rule is the con-

---

7. *Weaver* v. *American Oil Co., supra,* n. 6, appears to create a new exception not here relevant. "Indeed, there is some question as to whether the rule has any application at all under Indiana law in situations where there is a disparity in the bargaining position or expertise of the parties." *Grande* v. *General Motors Corp.* (1971), 444 F. 2d 1022, 1027, 25 Ind. Dec. 643 (citing *Weaver, supra,* and *General Grain, Inc.* v. *International Harvester Co.* [1968], 142 Ind. App. 12, 232 N. E. 2d 616; comparing *Swanson-Nunn Realty Co., Inc.* v. *Gentry* [1962], 134 Ind. App. 580, 186 N. E. 2d 574.)

tention that the trial court erred in refusing to instruct the jury "that plaintiff's remedy, if any, would have been an action in equity asking the court to reform said policy and they cannot recover in this action and your verdict should be for the defendant."[8] The company argues:

"The Farmowner's Policy measures the rights of the parties and the courts can only enforce its terms but have no authority to make a new and different contract for them. . . . Plaintiff's remedy, if any, would have been by reformation of the policy for a mutual mistake of the parties. *Metropolitan Ins. Co.* v. *Wininger* (1938), 215 Ind. 120, 127, 17 N. E. 2d 86. . . ."[9]

Of a similar contention made in *Tyler* v. *Anderson* (1885), 106 Ind. 185, 191, 6 N. E. 600, 603 (in which misrepresentation was a defense rather than a claim for damages as it is here) the court said:

"It is contended by appellee, that the defense set up can not be allowed without a reformation of the deeds. It is a sufficient answer to this to say, that the defense is not based upon the contract as evidenced by the deeds. As said by the New York court, in the case of *Thomas* v. *Beebe, supra* [5 N. Y. 244] the defense is based upon the fraud of the vendor, and not upon any warranty or contract on her part, in regard to the quantity of the land. The doctrine, therefore, of merger of all previous negotiations and representations and of the contract in the deeds, has no application to the case. Fraud can not be so merged. See, also, *Johnson* v. *Miln,* 14 Wend. 195; *Hines* v. *Driver,* 72 Ind. 125."

---

8. The full text of the instruction is:

"If you find from a fair preponderance of the evidence that when the defendant Vernon Fire & Casualty Insurance Company's policy Exhibit A was issued to the plaintiffs on or about March 21st, 1963, that plaintiffs and James O. Schepper intended to procure a policy of insurance that would protect the property described in the complaint from loss by fire while located at said saddle barn, but that through the mutual mistake of plaintiffs and Schepper the policy issued by the defendant failed to so protect such property, then I instruct you that plaintiffs' remedy, if any, would have been by an action in equity asking the court to reform said policy, and they cannot recover in this action and your verdict should be for the defendant."

9. Appellant's Brief, p. 100. The case cited is a suit "to recover on an insurance policy." (215 Ind. at 121.)

None of the trial court's rulings, either on the motion for summary judgment, on admissibility of evidence, on jury instructions, or on the motion to correct errors, contravenes the parol evidence rule, either procedurally or substantively.

## C. *Scienter.*

Although plaintiffs' Paragraph IV is labeled merely "Complaint for Misrepresentation" and nowhere uses the word "fraud" and nowhere charges that the false representations allegedly made by the Company's agents were known by those agents or by the Company to be false the pre-trial order clearly indicates that counsel for all párties treated it as charging fraud.[10]

The Court's Final Instruction No. 1 (see p. 696, *ante*) told the jury, in effect, that the plaintiffs' burden of proof as to *scienter* could be discharged either by proof that the Company's agent made the representation "knowing such representation to be false *or recklessly made such representation without knowledge of its truth or falsity.*" (Our emphasis.)

But the Company, largely on the basis of Mr. Thatcher's testimony on cross-examination "that in all his dealings with Schepper [the agent] he had found him honest, considered him as a friend and does not contend that Schepper lied to him or intended to cheat or deceive him,"[11] contends that there is no evidence of fraudulent intent. The contention is that: "Actionable fraud is founded on the defendant's moral de-

---

10. The court's preliminary Instruction No. 2 told the jury:

"Plaintiffs have filed their Paragraph IV in their Third Amended Complaint claiming damages from defendant in the sum of $7,402.22 for misrepresentation. Plaintiffs in their said Paragraph IV claim that the defendant through its general agent, James O. Schepper, and through its special representative, Thomas Fiscus, falsely represented to plaintiffs that plaintiffs' personal property at the Saddle Barn was insured against loss by fire by the policy issued by defendant when in fact said policy as issued did not cover plaintiffs' personal property at the Saddle Barn. Plaintiffs further claim that plaintiffs were ignorant of the falsity of said representations and believed them to be true and relied upon them all to plaintiffs damage in the sum of $7,402.22."

11. As summarized in Appellant's Brief, p. 103.

linquency, and there must be a fradulent intent or intent to deceive in order to establish actionable fraud."[12] There is respectable authority tending to support the proposition that the maker of false representations must have actual knowledge of the falsity else no action at law for damages for deceit can succeed. *Hartford Life Insurance Co.* v. *Hope* (1907), 40 Ind. App. 354, 359, 81 N. E. 595, 597, 1088.[13] But whatever may have been the law of prior cases, the opinion in *Clarke Auto Co.* v. *Reynolds, supra,* states the rule which has since been followed:

> "The fact that the officer or agent of appellant who made the representations did not know of their falsity, does not bar appellee's recovery. As was said by our Supreme Court in *Kirkpatrick* v. *Reeves et al.* (1889), 121 Ind. 280, 22 N. E. 139:
>
> 'An unqualified statement that a fact exists, made for the purpose of inducing another to act upon it, implies that the person who makes it knows it to exist, and speaks from his own knowledge. If the fact does not exist, and the defendant states of his own knowledge that it does, and induces another to act upon his statement, the law will impute to him a fraudulent purpose.' See also: *Williams* v. *Hume* (1925), 83 Ind. App. 608, 149 N. E. 355; *Wheatcraft* v. *Myers* (1914), 57 Ind. App. 371, 107 N. E. 81; *Romine* v. *Thayer* (1920), 74 Ind. App. 536, 128 N. E. 456; 7 Blashfield, *Cyc. of Automobile Law and Practice,* § 4232." (119 Ind. App. at 592.)

That rule was reaffirmed in *General Electric Co.* v. *Dorr* (1966), 140 Ind. App. 442, 458, 218 N. E. 2d 158, 219 N. E. 2d 206, 208. We accept and follow it as a well settled law in this state.[14]

---

12. 14 I. L. E. 163, Fraud § 11.

13. Strangely enough in that case, which was also for damages for misrepresentation of an insurance policy's provisions, the defendant company contended "that the intent is immaterial; that, if the misrepresentations are shown, fraud is imputed without regard to the intent with which they were made." (40 Ind. App. at 359.) The purpose of so contending was to create error in the admission of evidence of other misrepresentations by the same agent admitted for the purpose of showing intent and guilty knowledge.

14. *Dicta* in *Automobile Underwriters, Inc.,* v. *Rich* (1944), 222 Ind. 384, 53 N. E. 2d 775, which tends to the contrary we consider to be repudiated.

Furthermore, Thatcher's opinion of Schepper's honesty and veracity, based on prior dealings, does not preclude the jury from finding that the Company's field representative Fiscus and agent Schepper, either or both, knew that the representations they made to Thatchers were false. The jury was entitled to weigh Thatchers' opinion of Schepper with all the other evidence in the case, including the experience of Schepper and Fiscus in the insurance business and with the Farmowner's Policy, their denial that they ever made the representation and the consequent absence of any contention by either of them that he had, in fact, made an honest mistake.

The Company also argues that the statements made by its agent and its field representative were merely expressions of opinion. Nothing more is offered to support that characterization than its mere assertion. We recognize, however, that the legal effect of a contract, or of a particular provision of a contract, can often be a matter of uncertainty. In such a case one may in all honesty, candor, and sincerity, state his opinion predicting the ultimate interpretation without thereby making a statement of fact. But what may subjectively be merely an opinion can, nevertheless, be stated as a present existing fact. If the statement thus made as a representation is not true but is *justifiably* relied on as being true, deceit has been practiced. If damage results, liability cannot be avoided on the ground that what was stated as a fact was subjectively intended as merely an opinion.

The distinction between opinion and representation of fact is clearly expressed with respect to an analogous situation in *Bailey* v. *London Guarantee and Accident Company* (1918), 72 Ind. App. 84, 104, 121 N. E. 128, 133, in these words:

"In the instant case the representations were not in fact mere expressions of opinion by way of predictions as to the future course of appellant's injury, but they were representations of a then existing condition, namely, that there was a good union of the bones of said limb and that the limb was doing nicely. Coming from one whose profession and

whose relation to appellant and his injury were such as to afford him special knowledge on the subject, and make him capable of stating with substantial accuracy the condition of the limb as it then existed, the appellant had a right to rely upon said representations."

Whether the farmowners' business property away from the farm was covered by the Company's Farmowner's policy, or was excluded from coverage, was a fact which could have been known to the Company's agent and field representative before either made any statement concerning it.[15] There was substantial evidence of probative value from which the jury could have found, and we must therefore assume did find,[16] that they misrepresented that fact. If they were subjectively stating mere opinions they were reckless in stating them as facts without first having ascertained their truth.

The evidence is sufficient to sustain a finding that the Company through its representatives, made a false representation of policy coverage which they either knew to be false when they made it or which they made recklessly without knowledge of its truth or falsity.

D. *Agency, scope of authority, and vicarious liability.*

Because a 1935 statute[17] makes it a criminal offense to act as an insurance agent without being licensed under the act, the Company contends that agency could be proved only by producing a certified copy of the agent's license. *Old Line Automobile Insurors* v. *Kuehl* (1957), 127 Ind. App. 445, 455, 141 N. E. 2d 858, 862, found no merit in that contention.

Even the Company concedes that the fact that agent Schepper took Thatchers' application and later delivered the policy justifies the inference "that Schepper was authorized

15. It appears that after the fire occurred and before the litigation was commenced the fact of the exclusion became readily known to all concerned.

16. *Westfield Gas Corp.* v. *Hill* (1960), 131 Ind. App. 558, 565, 169 N. E. 2d 726, 730.

17. Ind. Acts 1935, ch. 162, § 215, IC 1971, 27-1-15-7, Ind. Stat. Ann. § 39-4507 (Burns 1965).

only to solicit insurance business for Vernon [the Company] but not to make the contract."[18] Since, however, it was never contended that agent Schepper made a contract, the disclaimer of implied authority to do so is beside the point. So is the statement that "[o]bviously, from the evidence in the case, Vernon had not authorized and would not authorize Schepper to bind Vernon by any of the statements which the Thatchers charge Schepper with making."[19] The question in point is whether the delivery of the policy (bearing Schepper's signature as "authorized agent") implies that he was authorized to tell Thatchers what it covered when he solicited their application for it.[20]

It strains credulity to believe that the managers of any insurance company would *actually* (not merely on paper) so limit the authority of the company's soliciting agents as to, in effect, instruct each to say to his prospects, "Let me take your application for a Farmowner's policy, but I cannot tell you what it covers." There are, however, recent cases which seem to be premised on such an assumption. One such case, *Farmers Mutual Insurance Company* v. *Wolfe* (1968), 142 Ind. App. 206, 217, 233 N. E. 2d 690, 692, states:

> "From an examination of the evidence it is apparent that the agent of the appellant insurance company . . . with whom appellee Wolfe conducted his negotiations, was nothing more than a soliciting agent, with his authority being limited to soliciting insurance, collecting premiums, submitting applications and performing acts incidental to such power. As such, he was a special agent rather than a general agent, with no specific authority to create an oral contract of insurance on behalf of the appellant insurance company. *The State Life Insurance Company* v. *Thiel* (1939), 107 Ind. App. 75, 20 N. E. 2d 693; *Resnick* v. *Wolf & Cohen*

---

18. Appellant's brief, p. 73.
19. *Ibid,* p. 74.
20. If a solicitor does have that authority, it would seem logical to assume that for a recklessly false and damaging statement of the extent of coverage, the company would have the same liability as the employer of a truck driver whose reckless driving damages another. In the truck driver's case it is no defense to the employer, if the driving was authorized, that the recklessness was not.

*Inc., et al.* (D.C. Mun. App., 1946), 49 A. 2d 809; *Sommerio* v. *Prudential Insurance Company of America* (1937), 289 Ill. App. 520, 7 N. E. 2d 631."

And further (142 Ind. App. at 219) :

"It appears that the trial court incorrectly concluded that it was Fisher's duty to inform appellee Wolfe of his limited authority. The correct rule, as judicially determined in the *Thiel* decision, is that appellee Wolfe was presumed to know of Fisher's limited authority and to act accordingly, *unless by Fisher's actions appellee Wolfe had the right to assume that apparently Fisher had the right to bind appellant.*

"The record is completely devoid of any evidence of past acts performed by Fisher from which appellee Wolfe could have reasonably interpreted that there was vested in Fisher the apparent authority to orally bind his principal."

What was actually decided in the *Farmers Mutual* case was that no oral contract of insurance had been effected because the agent lacked authority to make a contract for the company. On the facts of that case we have no quarrel with that decision, but insofar as it may be understood to imply that authority to solicit insurance does not carry with it, as a power impliedly incidental thereto, the apparent authority to state what the policy covers, we disapprove. The same is true of the opinion in *The State Life Insurance Company* v. *Thiel* (1939), 107 Ind. App. 75, 20 N. E. 2d 693. We particularly disapprove the statement in that opinion that an applicant for insurance (or a prospective applicant) "is presumed to know that under our law his [the agent's] authority to represent the appellant company was required to be in writing." (107 Ind. App. at 88.) Nor can we approve the statement that "it is the duty of every person who deals with a special agent to ascertain the extent of the agent's authority before dealing with him." (*Ibid.* at 89.)

There appears to be no case in Indiana in which those principles have been applied to insulate the company from liability for its soliciting agent's false representation of policy

coverage. There is, however, a case in which a federal court of appeals made such a holding based on Colorado law. In *Cadez* v. *General Casualty Company* (CA 10, 1961), 298 F. 2d 535, after holding the company not liable for representations of policy coverage made by "a soliciting or local agent," which representations had never come to the company's attention, the court said:

> "If untrained or over-zealous agents make negligent or reckless representations as to policy coverage and it can be shown that the company had actual knowledge thereof or that knowledge may be implied from the circumstances of a particular situation, the company must accept the responsibility."

Unlike the record in *Cadez,* the record at bar includes evidence from which company knowledge of Schepper's representations as to coverage may be implied. That evidence includes the admitted fact that after the delivery of the policy and prior to the fire at the stable the company paid a small claim for damage to business property kept at the Saddle Barn. It also includes Thatchers' and Fiscus' testimony of Fiscus' participation in a conversation between Thatchers, Schepper, and Fiscus in which, according to Thatcher, the representations made by Schepper were again made and/or reaffirmed. Fiscus testified as the Company's witness at the trial that he was a "Special Representative" of the Company whose duty it was to manage its southern Indiana operations including "anything that would be incidental to the operation of an insurance company." He specifically confirmed on cross-examination that he was authorized by the Company to explain his company's policies to the people who buy insurance from the Company.

At the trial the question of the agent's authority arose, in one of many instances, on the Company's objection to Plaintiffs'. Instruction No. 15, which the court gave. It reads:

> "In addition to the express authority conferred upon an agent by his principal, the agent has the implied authority

to do such acts and employ such means as are usual and reasonably necessary to accomplish the purposes and objects of his agency."

The Company's objection was not that the instruction incorrectly states the law, but that "[a]s applied to the evidence in this case, the implied authority referred to in the instruction might be misunderstood by the jury to include authority to an agent to enlarge or extend by oral statements of the agent the coverage of the written policy . . . so as to enable the insured to recover damages for loss of property not covered by the policy."[21] Under any theory of the nature and extent of the implied authority of an insurance agent the objection is not germane. Whether the coverage of the policy had been enlarged or extended was not at issue. The objection did not address itself to the instruction's applicability to the issue of whether authority to explain or represent the extent of policy coverage was a part of the agent's implied authority. There was no error in overruling the objection.

### E.  Damages.

Appellant submitted no instruction on damages[22] and is not now contending that there was error in the instruction given. The contention is that even if business property located at the Saddle Barn were covered by the policy the limit of such coverage was exhausted when payment was made for the non-business property loss for which judgment was rendered in the separated case under Paragraph I. Hence, it is contended, the verdict for the full value of the business property is excessive. Our examination of the trial proceedings as disclosed by the briefs indicates that the case was tried on

---

21.  Appellant's brief, p. 111.

22.  In response to a suggestion in appellee's brief that appellant should have tendered an instruction on another point appellant's reply brief states that the ten instructions defendant tendered "were the maximum number which could be tendered under TR. 51(D) and preserve any question for review on the refusal of an instruction." (p. 22). This ignores the rule's proviso: "however, . . . for good cause shown [the court] may fix a greater number."

plaintiff's theories that defendant negligently failed to provide insurance which did cover the business property at the stable and misrepresented the policy provided as furnishing such coverage. Defendant's theory was that there was no negligence and no misrepresentation. Whether there was no coverage because of policy limits or because of a business property exclusion is immaterial.

Since there is no contention that the damages awarded exceed the loss proximately resulting from the representation being false, there is no showing that the verdict is excessive.

Consistent with the views we have expressed in discussing each of the foregoing issues the trial court committed no error in overruling appellant's motion to correct errors.

The judgment is affirmed.

Buchanan, P.J., and Sullivan, J., concur.

NOTE.—Reported in 285 N. E. 2d 660.

### ON PETITION FOR REHEARING

WHITE, J.—Appellant's petition for rehearing contains but one allegation which deserves comment. We did, it is true, fail to make express reference to whether the trial court erred in reading to the jury its Instruction No. 8, as follows:

"False and fraudulent misrepresentations of an agent or employee made while acting in the scope of his authority, real or apparent, bind the principle (sic) or employer of such agent or employer. If defendant's agent or employee even without the authority of such defendant made a false representation of a material nature while acting in behalf of defendant, *the defendant would be bound thereby if the defendant afterwards ratified such false representation and received benefit thereof.*"

Appellant's objection below was

"that there is no evidence that 'the defendant afterward ratified such false representation and received the benefit thereof' as provided in the instruction."

We did, however, discuss the issue of agency and scope of authority, in the course of which we said:

"In *Cadez* v. *General Casualty Company* (CA 10, 1961), 298 F. 2d 535, after holding the company not liable for representations of policy coverage made by 'a soliciting or local agent,' which representations had never come to the company's attention, the court said:

'If untrained or over-zealous agents make negligent or reckless representations as to policy coverage and it can be shown that the company had actual knowledge thereof or that knowledge may be implied from the circumstances of a particular situation, the company must accept the responsibility.'

"Unlike the record in *Cadez*, the record at bar includes evidence from which company knowledge of Schepper's representations as to coverage may be implied. That evidence includes the admitted fact that after the delivery of the policy and prior to the fire at the stable the company paid a small claim for damage to business property kept at the Saddle Barn. It also includes Thatchers' and Fiscus' testimony of Fiscus' participation in a conversation between Thatchers, Schepper, and Fiscus in which, according to Thatcher, the representations made by Schepper were again made and/or reaffirmed. Fiscus testified as the Company's witness at the trial that he was a 'Special Representative' of the Company whose duty it was to manage its southern Indiana operations including 'anything that would be incidental to the operation of an insurance company.' He specifically confirmed on cross-examination that he was authorized by the Company to explain his company's policies to the people who buy insurance from the Company." 285 N. E. 2d at 671, 32 Ind. Dec. at 129.

Our approval of the *Cadez* dictum is approval of the principle of Instruction No. 8.

The petition is denied.

Buchanan, P.J., and Sullivan, J., concur.

NOTE.—Reported in 287 N. E. 2d 776.